**Bennie Lee WILLIAMS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1183S417.

Supreme Court of Indiana.

May 1, 1985.

Nile Stanton & Associates, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Bennie Lee Williams, was convicted by a jury of criminal deviate conduct, a Class A felony, Ind.Code § 35–42–4–2 (Burns 1985 Repl.), three counts of rape, Class A felonies, Ind.Code § 35–42–4–1 (Burns 1985 Repl.) and three counts of robbery, Class B felonies, Ind.Code § 35–42–5–1 (Burns 1985 Repl.) and was sentenced to four terms of imprisonment of thirty years and three terms of ten years, all to be served concurrently. He raises the following issues in this direct appeal:

1. Whether the court erred in admitting the victims' in-court identifications of the defendant and the testimony concerning their out-of-court identifications over the defendant's objection alleging unduly suggestive identification procedures; and

2. Whether the court erred in admitting evidence of the defendant's flight after an allegedly improper investigatory stop.

### I.

The facts most favorable to the state are that the defendant and two companions approached the three victims as they were leaving an Indianapolis night spot. The defendant threatened them with a gun and the victims were forced into their car, which the defendant then drove away. He stopped near a wooded area and, at gunpoint, robbed the victims of their money. They were ordered to remove their clothes and the women were each raped by the defendant. He forced one victim to commit sodomy. The defendant and the other two men then permitted the victims to leave.

During the next year, two of the victims saw the defendant and reported that he was driving a green automobile with Illinois license plates. Later, officers spotted the defendant in a parking lot and detained him while one of the victims was brought to the scene to make an identification. The "lineup" which the victim observed from forty yards, consisted of a black out-of-uniform police officer, the defendant, and three other black men. The victim had been told that they had the man they had

been looking for. She identified the defendant as the rapist.

The following month, the other two victims chose the defendant from photographic arrays. They, too, had been informed that the arrays contained a photograph of a suspect arrested for the crime.

■ The defendant claims these pretrial identification procedures were unduly suggestive and created a substantial likelihood of misidentification. *Simmons v. U.S.,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. In each instance, the victim was told by the police they had arrested one of lineup members for the rape. Although a witness may logically assume that this is the case, the police should not so inform her; *see, Coleman v. Alabama,* (1970) 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387. That information could needlessly pressure the witness to make an identification. *Haun v. State,* (1983) Ind., 451 N.E.2d 1072; *Sawyer v. State,* (1973) 260 Ind. 597, 298 N.E.2d 440.

Regardless of the errors in the pretrial procedure raised by the defendant, however, the victims' identifications of the defendant were not improperly admitted. Each testified that during the crime she observed the defendant closely under adequate light over a period of several hours. *See Harris v. State,* (1980) 273 Ind. 60, 403 N.E.2d 327. Therefore, their testimony was based on observations independent of the pretrial procedure. *Harding v. State,* (1984) Ind., 457 N.E.2d 1098. The defendant's arguments pertaining to inconsistencies in the victims' descriptions of the defendant to the police raise issues only of credibility which we will not review. The trial court did not err,

## II.

■ The defendant failed to appear for trial. A year later he was the subject of an investigatory stop in Missouri. The investigating officer discovered then that the defendant was wanted in Indiana and arrested him after the defendant tried to flee. The evidence of the defendant's flight was admitted at trial. The defendant argues the testimony should have been excluded because the investigatory stop violated his constitutional right against unreasonable intrusion.

The circumstances of the Missouri arrest are these: The defendant was walking on a well-lit sidewalk at 1:30 a.m. The officer who stopped and detained him testified that the area is a high-crime district which is partly residential and partly commercial. The defendant was the only person out in the area. He had something tucked under his arm which, as it turned out, was a coat. The officer said he stopped the defendant to find out who he was and what he was carrying under his arm. The officer testified to no other suspicious activity by the defendant. The defendant was not stopped in connection with any specific crime, and the officer did not indicate that the object folded under the defendant's arm appeared to be a concealed weapon or contraband.

We disagree with the state that this intrusion was justified pursuant to *Terry v. Ohio,* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In *Terry,* a police officer observed two men repeatedly walking back and forth and conferring in front of store windows. Suspecting that the men were "casing" the area in preparation for a crime, the officer stopped and frisked the men. Terry argued that the police action violated his Fourth Amendment guarantee against search and seizure without probable cause. The Supreme Court held that the governmental interest in swift and effective law enforcement justifies an intrusion absent probable cause in the situation where a police officer observes specific and articulable facts which lead him to a reasonable suspicion that an individual is involved in criminal activity. Then, in *Brown v. Texas,* (1979) 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357, the Supreme Court reversed Brown's conviction under a Texas statute which provided that a person commits an offense when he refuses to identify himself to a police officer upon demand. In *Brown,* a police officer observed Brown and another man walking away from each other in an alley. The particular area of

town was known to the officer as a high-crime area, but he pointed to no specific facts connecting Brown with a crime. The Supreme Court declared the statute unconstitutional because it sanctioned unreasonable intrusions in violation of the Fourth Amendment. The Court wrote:

"The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley 'looked suspicious,' but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

"In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference. The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits."

*Brown v. Texas,* (1979) 443 U.S. at 51–2, 99 S.Ct. at 2640–41, 61 L.Ed.2d at 362–63.

In the case before us now, the factors which could arguably justify the defendant's detention are the late hour, the characteristics of the neighborhood, and the fact that he was carrying an unidentifiable item. None of these alone can be said to justify police intrusion and we cannot say that, under the circumstances of this case, the combination of these facts justified the stop. The officer observed the defendant walking on a sidewalk at night. He happened to be carrying a coat. Nothing about the defendant's activity suggested criminality. The item he was carrying did not appear to be a weapon or the fruits of a crime, nor was there any specific crime in the area of which the officer was aware which might have involved the defendant. As in *Brown,* the officer here had no basis for suspecting the defendant of misconduct.

Thus, we agree with the defendant that the investigatory stop in Missouri exceeded constitutional limits. However, the only excludable evidence stemming from the illegal detention is of the defendant's flight. In light of the three victims' unequivocating identifications and the testimony that the defendant failed to appear for his first trial date, we do not believe the evidence of flight could have contributed to the guilty verdict enough to warrant reversal. The error was harmless beyond a reasonable doubt. *Chapman v. California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Head v. State,* (1982) Ind., 443 N.E.2d 44; *Williams v. State,* (1982) Ind., 433 N.E.2d 769.

For all the foregoing reasons, the judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., concurs in result.