David G. LUSTER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9101–CR–45.[1]

Court of Appeals of Indiana,
Fifth District.

Sept. 24, 1991.

**1.** This case has been diverted to this office by order of the Chief Judge.

Terrence P. Kirby, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

RUCKER, Judge.

David Luster appeals his conviction for dealing in cocaine,[2] a Class A felony, and possession of cocaine,[3] a Class C felony for which he received concurrent sentences of 20 years and 5 years respectively. Luster raises two issues for our review which we rephrase as:

1. Whether the evidence admitted against Luster was the product of an unreasonable search and seizure.

2. Was Luster denied effective assistance of counsel.

We affirm.

At 1:35 a.m. on August 21, 1989, Indianapolis Police Officer Thomas Black was patrolling in a squad car near the intersection of 24th and Pennsylvania Street in the City of Indianapolis. The intersection is located in an area of frequent crime, including stealing and stripping of cars and drug trafficking. While patrolling, Officer Black observed a pickup truck, with its lights on, parked behind another car. Both vehicles were located in a parking lot with no adjoining businesses. Officer Black observed the Defendant, later identified as David Luster, standing next to the open door on the driver's side of the truck. Black then drove his marked police car onto the parking lot. Upon seeing Officer Black approach, Luster dived into the truck, laid his body across the front seat and made movements as if he were attempting to hide something. Luster then quickly stepped back out and resumed standing next to the truck on the driver's side.

Officer Black, in full police uniform, exited the police car and walked toward Luster. After telling Luster to place his hands on the bed of the truck, Black looked through the open cab door and into the cab of the truck which was illuminated by an interior dome light. On the driver's seat Officer Black observed a small hand held scale commonly used in illegal drug trafficking. Hanging out of a vent on the passenger side of the truck, where Luster's upper body had been when he dived into the truck, Officer Black also observed a rolled up paper bag. Officer Black then opened the passenger door and retrieved the paper bag. Inside the bag were cash in the amount of $279.00 and eleven separate packages containing a white powdery substance. The Officer seized the scale, the packages and cash, advised Luster of his *Miranda* rights, and arrested him.

## I.

At trial, over timely objection, the scale, white powdery substance identified as cocaine, and the cash were admitted into evidence. Luster challenges their admission arguing the evidence was the product of an illegal search and seizure. Determining whether the evidence was confiscated as a result of an illegal search and seizure requires a step by step analysis of the facts. For purposes of discussion, we approach the analysis by dividing the facts into separate actions: 1) the investigatory stop; 2) the "open view" search; and 3) the search of the paper bag.

### The Investigatory Stop

Luster contends that Officer Black did not have sufficient, reasonable and articulable suspicion of criminal activity to warrant the investigatory stop in the parking lot. Luster cites *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, in which the United States Supreme Court indicated, in order to justify a particular intrusion, "a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.*, 392 U.S. at 21, 88 S.Ct. at 1880. Luster points out that he had a right to be present in the parking lot in the early morning hours of August 21. Luster asserts that simply because he was

---

**2.** Ind.Code § 35–48–4–1.

**3.** Ind.Code § 35–48–4–6.

present in a high crime area and that it was 1:30 a.m. did not constitute articulable facts leading to reasonable suspicion that criminal activity was afoot. *Id.* Luster further contends the evidence of his diving into the truck after seeing the Officer approach represents fruit of an illegal stop and testimony concerning that evidence should not have been admitted at trial.

■ Whether a particular fact situation justifies an investigatory stop is determined on a case by case basis. However, case law provides helpful general guidelines. An investigatory stop is proper when an officer has reasonable suspicion that a person has been involved in criminal misconduct. *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. A police officer may make an initial investigatory stop when the specific and articulable facts known to the officer would warrant a man of reasonable caution in believing that the investigation is appropriate. *Terry, supra.* Reasonable suspicion entails some minimum level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or "hunch," but considerably less than proof of wrongdoing by a preponderance of the evidence. *U.S. v. Sokolow* (1989) 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1. In evaluating the validity of an investigatory stop, the court must consider "the totality of the circumstances—the whole picture." *United States v. Cortez,* (1981) 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621. Thus, the issue becomes a narrow one: based on the totality of the circumstances, did Officer Black have the requisite reasonable suspicion to make an investigatory stop of Luster?

■ As to Luster's claim that he was not "doing anything illegal" before the stop, the United States Supreme Court has held that there could be circumstances when a person's wholly lawful conduct might justify the suspicion that criminal activity was afoot. *Reid v. Georgia* (1980), 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (*per curiam* ). A series of acts taken together, each of them perhaps innocent if viewed separately, could warrant investigation. *Terry, supra.*

■ Luster claims that the time of day and location of the stop are not to be considered as articulable facts leading to reasonable suspicion of criminality. Although the time of day and location of the stop are factors which, standing alone, do not justify an investigatory stop, courts have held that they are among relevant factors to be considered when measuring the facts available to the officer which lead him "reasonably to conclude in light of his experience that criminal activity *may* be afoot." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884 (emphasis added); *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely); *see also,* 3 W. LaFave, Search and Seizure § 9.3(c) (2d ed. 1987 & Supp.1991).

Courts have limited the importance accorded to the factors of time of day and location of the stop in reaching suspicion of criminality necessary for an investigative stop. One court aptly stated:

Strictly speaking, the "night-time factor" is not "activity" by a citizen, and this court has warned that this factor should be appraised with caution ... and that it has, at most, 'minimal importance' in evaluating the propriety of an intrusion.

*People v. Bower* (1979), 24 Cal.3d 638, 156 Cal.Rptr. 856, 597 P.2d 115. In *Bower,* the court did suggest that there could be an hour which could justify an inference of criminality by concluding that 8:30 p.m. "was simply not a late or unusual hour nor one from which any inference of criminality may be drawn." *Id.* Likewise, "[t]he fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct." *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357.

Our Supreme Court has indicated that where *nothing* about a person's activity suggests criminality, even if it is 1:30 a.m. and the defendant was in a "high crime

area," an investigatory stop is unjustified. *Williams v. State* (1985), Ind., 477 N.E.2d 96 (emphasis added). The case at bar can be distinguished from *Williams* based on the facts.

In *Williams,* the defendant was walking on a well lit sidewalk at 1:30 a.m. in a high crime area carrying an object under his arm later discovered to be a coat. The detaining officer testified that there was no other suspicious activity. The officer also testified that the object under Williams' arm did not appear to be a concealed weapon or contraband. Like the appellant in *Brown, supra,* the appellant in *Williams* was a pedestrian carrying on "an activity no different from other pedestrians in the neighborhood." *Brown,* 443 U.S. at 52, 99 S.Ct. at 2641.

In contrast, Officer Black observed Luster standing alone by a truck with its front beams and interior lights on in an unused parking lot and he observed Luster diving into the cab as if in an attempt to hide something when the officer approached. Unlike the officers in *Williams* and *Brown,* Officer Black had specific and articulable facts on which to rely beyond merely the time of day or the location of the suspect. Thus, while time of day and location of stop, each standing alone, cannot justify an investigatory stop, they will not be ignored by this court as factors to be considered.

The most incriminating specific and articulable fact giving rise to reasonable suspicion of criminality was Luster's action of diving into the cab of the truck as if to hide something as Officer Black approached. Luster contends that this fact is inadmissible as a fruit of an impermissible search because it happened after the Officer made his decision to detain Luster.

■ An investigatory stop begins, for purposes of the Fourth Amendment, when a person being questioned no longer remains free to leave. *Molino v. State* (1989), Ind., 546 N.E.2d 1216, *quoting United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. Until then, there has been no intrusion upon the person's liberty or property inter-

est. *Id.* Before Officer Black exited his car to approach Luster, Luster was free to carry on his personal business. In fact, Officer Black testified that it was only after watching Luster dive into the truck, lay his body across the seat as if in an attempt to hide something, and jump back out of the truck that the Officer exited his car to approach Luster. *Record* at 73–74. Until that time, no intrusion on Luster's privacy or property rights had occurred. Luster's actions after seeing the police car are legitimate factors to be considered in assessing the reasonableness of the investigatory stop and testimony concerning these actions was properly admitted into evidence.

■ Though not raised by Luster, it is a concern of this court that Officer Black, upon approaching Luster, did not question him as a suspect as did the police officers in many of the *Terry* type cases cited by both parties. Officer Black failed to ask any questions of Luster and simply told him to place his hands on the bed of the truck. Although the "stop" in *Terry* was accompanied by questioning of the suspects, *Terry* makes clear that the central inquiry under the Fourth Amendment is the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security. *Terry,* 392 U.S. at 19, 88 S.Ct. at 1878. "Stop" within the term stop and frisk includes "necessarily swift action predicated upon the on-the-spot observations of an officer on the beat." *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879. While the better practice would have included questioning Luster before taking additional action, given the facts of this case, we hold that Officer Black acted reasonably by telling Luster to place his hands on the truck instead of first questioning him.

■ In brief, viewing the circumstances in their totality, the detaining officer must have a particularized and objective basis for suspecting the individual of criminal activity. *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621. In this case, Officer Black was justified in making an investigatory stop. The particu-

larized and objective facts for suspecting Luster of criminal activity are as follows: 1) the unusual parking location of Luster's truck; 2) Luster was alone, standing by his truck, in a lot with no adjoining businesses; 3) the parked truck had its front beams on and the interior dome light was lit; 4) it was 1:30 a.m.; 5) the area was known for drug trafficking; and 6) Luster's reaction to the police car's approach, diving into the cab of the truck as if to hide something and quickly stepping out. We hold that the investigatory stop was reasonable.

### The "Open View" Search

 Luster claims that the warrantless search of his vehicle, which ultimately resulted in Officer Black's recovery of the cocaine, scales, and money, was illegal. We disagree. When a police officer properly stops a vehicle, no "search" in the constitutional sense occurs when the officer merely looks into the vehicle to see what is inside: evidence found in such "open view" is not the product of an illegal search. *Hester v. State* (1990), Ind.App., 551 N.E.2d 1187. Officer Black's view of the scale and the rolled up paper bag was lawful and did not constitute an illegal search.

### The Search of the Paper Bag

 Luster further contends that the warrantless search of the rolled up paper bag was illegal because Officer Black was not searching for a dangerous weapon nor was the search incident to arrest. When facts and circumstances within the knowledge of an officer conducting a search are sufficient in themselves to believe that an offense has been or is being committed, and police are faced with exigent circumstances which render procurement of warrant impractical, then a warrantless search and seizure are permissible. *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486.

 Probable cause exists when the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question. *Id.* In the present case the sur-

rounding circumstances, which included Luster's actions as if in attempt to hide something, Officer Black's plain view of the scales, and the view of the rolled up paper bag, constitute probable cause to justify the warrantless search. Luster correctly conceded during argument on his Motion to Suppress that Black had probable cause to believe a crime had been committed after viewing the scales. *Record* at 83. Further, when supported by probable cause, the warrantless search of an automobile may extend to every part of the vehicle where the objects of the search might be concealed. *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572.

Black's warrantless search of the paper bag was reasonable because the Officer had probable cause to believe that a crime had been committed and faced exigent circumstances which rendered procurement of a warrant impracticable. *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486. Exigent circumstances may be presumed from the fact that an automobile, here, a truck, is readily movable and that evidence contained in an automobile can be easily moved or destroyed. *Hester v. State* (1990), Ind.App., 551 N.E.2d 1187 *quoting Murphy v. State* (1986), Ind., 499 N.E.2d 1077. We hold that the search and seizure of the rolled up paper bag was reasonable and that the trial court did not err in admitting its contents into evidence.

### II.

Luster next contends his conviction should be reversed because he received ineffective assistance of counsel. He claims that the public defender appointed to represent him was ill-prepared, failed to investigate and interview witnesses, failed to cross examine the State's only witness, did not call Luster to the witness stand, and failed to present a defense.

 In order to prevail on a claim of ineffective assistance of counsel, Luster must prove 1) that counsel's representation was deficient and 2) that the deficient performance so prejudiced defendant so as to deprive him of a fair trial. *Steele v. State*

(1989), Ind., 536 N.E.2d 292 *quoting Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The Record does not reveal that the defense counsel was ill-prepared. On the contrary, Luster's counsel prepared a written pre-trial motion to suppress all physical evidence seized (*Record* at 19), presented evidence at trial in support of the motion to suppress (*Record* at 70–78), vigorously argued the motion (*Record* at 81–83, 86–91), and he also cross examined the State's primary witness (*Record* at 78–81).

Luster contends that his counsel's failure to call him to the stand or call other witnesses demonstrates ineffective assistance. We disagree. It is well established that this court will not second guess the trial strategy or tactics of defense counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Gann v. State* (1990), 550 N.E.2d 73. Deliberate choices by attorneys for some tactical or strategic reason do not establish ineffective assistance of counsel even though such choices may be subject to criticism or the choices ultimately prove detrimental to the defendant. *Cobbs v. State* (1982), Ind., 434 N.E.2d 883.

Moreover, Luster fails to point to any evidence on the record to support his claims of ineffective assistance of counsel. In Luster's brief, he alludes to facts outside of the record, such as the truck was not registered in Luster's name and he knew someone who could testify on his behalf. An appellant may not attempt to build a new record on appeal to support his position with evidence that was never admitted in the court below. *United States v. Phillips* (7th Cir.1990), 914 F.2d 835. As Luster's assertions are not part of the record on appeal, they are not properly reviewable by this court.

In order to prevail on a claim of ineffective assistance of counsel, an appellant must overcome a presumption of competency of counsel by strong and convincing evidence which leads unmistakably and unerringly to the conclusion that he was denied ineffective assistance of counsel. *Williams v. State* (1988), Ind., 525 N.E.2d 1238. Luster has not presented such evidence here. Luster was not denied ineffective assistance of counsel.

### III.

We next address the trial court error in imposing sentences on both Counts I and II. We note this court may recognize fundamental error even though, as here, both parties failed to raise the error in the appeal. *Haggard v. State* (1983), Ind.App., 445 N.E.2d 969. Count I charged Luster with dealing in cocaine and Count II charged him with possession of cocaine. Possession of cocaine is an inherently included lesser offense of dealing in cocaine. *Mason v. State* (1989), Ind., 532 N.E.2d 1169, *cert. denied* 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428; *Frierson v. State* (1991), Ind.App., 572 N.E.2d 536. In *Mason*, involving dealing and possession of heroin, our Supreme Court stated, "[w]here the conviction of a greater crime cannot be had without conviction of the lesser crime, the double jeopardy clause bars separate conviction and sentencing on the lesser crime when sentencing is imposed on the greater one." *Mason*, 532 N.E.2d at 1172, *quoting Boze v. State* (1987) Ind., 514 N.E.2d 275, 277.

The evidence of this case shows only one possession of cocaine by Luster. That possession constitutes a material element of the crime of dealing in cocaine and supports that conviction. Luster could not attempt dealing in cocaine without possession of cocaine. The trial court erred in sentencing Luster for both offenses.

We remand to the trial court with instructions to set aside Luster's conviction and sentence for possession of cocaine. In all other respects, the trial court is affirmed.

RATLIFF, C.J., and SHARPNACK, J., concur.