Jason Allen REEVES, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A05–9509–CR–352.

Court of Appeals of Indiana.

June 4, 1996.

Jeffrey L. Sandford, South Bend, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARTEAU, Judge.

Jason Allen Reeves appeals from a conviction of carrying a handgun without a license within one thousand feet of school property, a Class C felony.[1] We reverse and remand with instructions to vacate Reeves's conviction.

### ISSUE

One issue is presented for our review, restated as whether the handgun, which was the foundation for Reeves's conviction, was discovered through an unlawful search and seizure.

### FACTS

The facts, viewed in the light most favorable to the State, reveal that on December 10, 1994, at approximately 3:00 p.m., Officer Cameron of the South Bend Police Department was driving his marked police vehicle in a neighborhood known for a high volume of drug traffic and shootings. Officer Cameron observed two black male juveniles standing on the corner of Jefferson and Falcon streets. One of the juveniles, later identified as Reeves, waved at Officer Cameron. The other juvenile, rather than waving at Officer Cameron, looked at the ground, glanced up at Officer Cameron a few times and looked over his shoulder at Officer Cameron as Officer Cameron drove past. The two juveniles then began walking down the street. Officer Cameron became suspicious because of the inconsistent reactions to his presence and called for backup police support. He then circled around to return to the juveniles and pulled his police car across the "tree lawn"[2] in order to block a potential escape route. Officer Cameron then exited his squad car, ordered the two up against the car and frisked them. Reeves was carrying a .45 caliber handgun, within 100u feet of a school and without a license. Reeves's defense counsel filed a motion to suppress physical evidence, which the trial court denied after a

hearing. Defense counsel preserved the issue for review with a timely objection at trial.

### DISCUSSION

■ Reeves contends that the investigatory stop and subsequent pat-down search conducted by Officer Cameron violated his rights granted under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution to be secure against an unreasonable search and seizure.

■ Under *Terry v. Ohio,* a police officer, without a warrant or probable cause, may make an initial or investigatory stop of a person, if, based on specific and articulable facts and the rational inferences drawn from those facts, the officer has a reasonable suspicion of criminal activity. 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). In order to justify the investigatory stop, the police officer must be able to point to the specific and articulable facts that created the suspicion of criminal conduct. *State v. Nesius,* 548 N.E.2d 1201, 1203 (Ind.Ct.App.1990). "Reasonable suspicion entails some minimum level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but considerably less than proof of wrongdoing by a preponderance of the evidence." *Luster v. State,* 578 N.E.2d 740, 743 (Ind.Ct. App.1991) (citing *U.S. v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Based on the totality of the circumstances, the detaining officer must have a particularized and objective basis for suspecting the particular person stopped of engaging in criminal activity. *Nesius,* 548 N.E.2d at 1204. "Whether a particular fact situation justifies an investigatory stop is determined on a case by case basis." *Luster,* 578 N.E.2d at 743.

The specific facts offered by Officer Cameron as justification for the stop are that Reeves and his companion were standing on a street corner in a high crime neighborhood. Reeves waved to Officer Cameron while his companion avoided eye contact, taking quick

---

1. Ind.Code § 35–47–2–1 (West Supp.1995); I.C. § 35–47–2–23(c)(1)(B) (West Supp.1995).

2. We do not know the meaning of the phrase "tree lawn." However, the participants consistently used this phrase to describe the location of Officer Cameron's car.

peeks at Officer Cameron instead. Additionally, the two began walking as Officer Cameron drove by them. None of these facts alone nor in combination creates a reasonable suspicion of criminal activity. Officer Cameron observed Reeves and his companion standing on a street corner, in their own neighborhood, on a sunny winter afternoon. The only "suspicious" activity was Reeves's companion's failure to react to Officer Cameron's presence in the same manner as did Reeves, and there is nothing particularly unusual about a pedestrian not actively seeking eye contact with a passing police officer.

A similar situation was addressed by our Supreme Court in *Williams v. State,* 477 N.E.2d 96 (Ind.1985), *reh'g denied.* Williams was observed walking on a well-lit sidewalk, in a high-crime district, at 1:30 in the morning. *Id.* at 98. Williams was the only person in the area and had something tucked under his arm. *Id.* The officer stopped Williams to find out who he was and what he was carrying. *Id.* The investigatory stop was found to be unjustified, because the facts relied upon by the officer were an insufficient basis for suspecting Williams of criminal activity. *Id.* at 99. The opinion relied heavily on *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). In *Brown,* a police officer observed Brown and another man walking away from each other in an alley in a high-crime area and made an investigatory stop. In finding the stop violative of Brown's constitutional rights,[3] the United States Supreme Court noted:

> The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley 'looked suspicious,' but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was en-

gaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

> In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference.

*Brown,* 443 U.S. at 51–52, 99 S.Ct. at 2641.

Like *Brown* and *Williams,* Officer Cameron's suspicion that Reeves and his companion were involved in criminal activity was not based on specific and articulable facts indicative of criminal activity, but was instead based on an unparticularized suspicion or hunch. Such is reflected in Officer Cameron's own testimony:

> Our initial idea is to make several passes around Lasalle Park homes area. It has traditionally been a high drug, gun, shooting, drive-by shooting area. R. 50.

> [W]e traditionally head right to that area to make several passes around to find out who is out and what's going on. R. 51.

> Like I said, we come out there. We check the people. I've made several drug arrests. I've found several handguns and shotguns and numerous weapons on people, made arrests there. We find numerous guns and drugs after we talk to people on the corners also. R. 51.

> Well, when we—I can only give you—you know, my profile is that, you know, they're usually younger, male blacks, standing on the corner. If they're standing there loitering, we'll stop and talk to them, pat them down initially right off the bat for weapons so that we don't get shot while we're standing there. Like I said, we've had numerous problems there. R. 53–54.

---

**3.** A Texas statute providing that a person commits an offense when he refuses to identify himself to a police officer upon demand was determined to be unconstitutional.

My intention was to stop and talk to the boys, find out who they were and pat them down and just identify them, like we always do. R. 66–67.

The specific and articulable facts identified by Officer Cameron as justification for the stop are insufficient to create a reasonable suspicion of criminal activity. Reasonable suspicion entails something more than an unparticularized suspicion or hunch. *Luster*, 578 N.E.2d at 743. Reasonable suspicion entails some minimum level of objective justification for making a stop. *Id.* Because Officer Cameron did not have a reasonable suspicion of criminal activity at the time he stopped[4] Reeves, the gun discovered as a result of the stop cannot be used against Reeves in a criminal prosecution. Reeves was convicted of carrying a handgun without a license, within one thousand feet of school property. Without the gun, there is no crime. Thus, Reeves's conviction is vacated.

SHARPNACK, C.J., and RUCKER, J., concur.

---

4. The State argues that facts which occurred after Officer Cameron made the decision to stop Reeves and initiated the stop may be considered in determining whether the stop was justified. We disagree. Events occurring after initiation of the stop have no bearing on whether the stop was justified. Officer Cameron decided to stop Reeves, called for backup, and pulled his car across the "tree lawn", 10–15 feet away from Reeves. Officer Cameron's intention to stop Reeves would be obvious to Reeves at that point. Thus, events occurring thereafter are irrelevant. *See Williams*, 477 N.E.2d at 98–99 (evidence of flight after improper investigatory stop should have been suppressed).