Keith B. CANAAN, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 82S00–9012–PD–816.

Supreme Court of Indiana.

June 23, 1997.

Rehearing Denied Sept. 25, 1997.

Susan K. Carpenter, Public Defender, Steven H. Schutte, Deputy Public Defender, Lisa Malmer, Deputy Public Defender, Michael C. Keating, Special Assistant, Glenn A. Grampp, Special Assistant, Indianapolis, for appellant.

Pamela Carter, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for appellee.

SULLIVAN, Justice.

Petitioner Keith B. Canaan appeals the denial of post-conviction relief with respect to his convictions for murder, burglary, and attempted criminal deviate conduct and his sentence of death. We earlier affirmed Canaan's direct appeal of these convictions and sentence. *Canaan v. State*, 541 N.E.2d 894 (Ind.1989). Our earlier opinion contains a description of the crimes of which Canaan was convicted. *Id.* We affirm the denial of post-conviction relief.

### Discussion

At the trial on his petition for post-conviction relief, Canaan had the burden of establishing his grounds for relief. Ind.

Post–Conviction Rule 1(5). Therefore, he is now appealing from a negative judgment. When an appeal is from a negative judgment, a court on review must be convinced that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the trial court. *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995); *Williams v. State,* 508 N.E.2d 1264, 1265 (Ind.1987); *Lowe v. State,* 455 N.E.2d 1126, 1128 (Ind.1983). It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Spranger,* 650 N.E.2d at 1119 (quoting *Fleenor v. State,* 622 N.E.2d 140, 142 (Ind.1993), *cert. denied,* 513 U.S. 999, 115 S.Ct. 507, 130 L.Ed.2d 415 (1994)).

■ Several of Canaan's claims for post-conviction relief are grounded in his contention that he did not receive the minimum level of effective assistance from his trial counsel that the Constitution requires. We analyze such claims according to the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Lowery v. State,* 640 N.E.2d 1031, 1041 (Ind.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). First, we require the defendant or petitioner to show that, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. *Id.* This showing is made by demonstrating that counsel's performance was unreasonable under prevailing professional norms. *Id.* (citing *Turner v. State,* 580 N.E.2d 665, 668 (Ind.1991)). Second, we require the defendant or petitioner to show adverse prejudice as a result of the deficient performance. This showing is made by demonstrating that counsel's performance was so prejudicial that it deprived the defendant or petitioner of a fair trial. *Lowery,* 640 N.E.2d at 1041. We will conclude that a fair trial has been denied when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unreliable. *Id.* (citing *Best v. State,* 566 N.E.2d 1027, 1031 (Ind. 1991)).

**I**

Canaan contends that he was denied the effective assistance of counsel to which he was entitled when counsel (a) refused to call Canaan as a witness; (b) decided to try the habitual offender count prior to the penalty phase; (c) failed to object to the introduction into evidence of items seized from Canaan's bedroom; (d) failed to object to empaneling a jury drawn from an adjoining county; and (e) failed to present evidence in mitigation of the sentence, where counsel allegedly had done no preparation for the penalty phase of Canaan's trial.

**A**

Canaan contends that he is entitled to post-conviction relief because his trial counsel did not call him to testify. In this appeal, Canaan abandons the argument he made at his post-conviction trial that counsel was ineffective for not calling him to testify at trial[1] but continues to argue that counsel was ineffective for not calling him as a witness at the penalty phase for two reasons. First, Canaan contends, the risk he faced during the guilt phase of being impeached by his prior criminal record no longer existed as, prior to the penalty phase commencing, his record already had been revealed in the habitual offender phase. Second, Canaan argues, had he testified at the penalty phase, he could have "filled in major gaps in the jury's knowledge regarding him."

As discussed at the outset of this opinion, our role in reviewing this appeal from a negative judgment is to determine whether undisputed evidence, subject to the post-conviction court's opportunity to judge credibility, unerringly and unmistakably leads us to an opposite conclusion. *Spranger,* 650 N.E.2d at 1121. The post-conviction court made certain findings of fact from which it concluded that the decision not to call Ca-

---

1. "[Canaan's post-conviction] counsel would ... concede that the decision not to call Canaan as a witness in the guilt portion of the trial may have been, in fact, sound trial strategy." Br. of Pet'r–Appellant at 58.

naan as a witness at the penalty phase was proper trial strategy.

■ Our review of the record indicates that there was evidence to support the post-conviction court's findings of fact. Both trial counsel and co-counsel testified as to the reasons they concluded that it would not be in Canaan's interest for him to testify at the penalty phase. In particular, co-counsel testified that she feared that, if Canaan took the stand, his demeanor was such that he would appear to the jury to be cold and unsympathetic.[2]

Our review of the post-conviction court's findings does not lead us to an opposite conclusion. *See Ford v. State,* 523 N.E.2d 742, 747 (Ind.1988); *Schick v. State,* 570 N.E.2d 918, 929 (Ind.Ct.App.1991), *trans. denied; Luster v. State,* 578 N.E.2d 740, 746 (Ind.Ct.App.1991) (each holding that counsel's recommendation that defendant not testify was a tactical choice and not ineffective assistance of counsel).[3]

**2.** The precise colloquy with co-counsel during the post-conviction hearing was as follows (prosecutor questioning):
Q. Okay. You indicated one of the factors that you took into consideration in deciding whether or not Keith Canaan would testify, is that he came across as a cool collected person?
A. Yes.
Q. Did you, was it your concern that the jury would view him as cold?
A. Yes.
Q. His affect was cold?
A. Yes.
Q. He did not have what you considered to be sympathetic emotional responses to the circumstances of the case?
A. I just, I don't know if it is to the circumstances, I think that is just his personality.
Q. Okay. But your concern was that they would see it as being unsympathetic?
A. Yes.
Q. Or unsympathetic to the circumstances?
A. Yes.
Q. Would that be things such as being able to talk about Lori Bullock's death without any seeming emotional affect?
A. Yeah, I think he could talk about anything without emotional affect because that is just . . .
Q. I understand he could talk about anything but that would include Lori Bullock's death?
A. Yes.
Q. And his current situation?
A. Yes.

We affirm the post-conviction court's conclusion that Canaan has failed to demonstrate that the decision not to call Canaan as a witness during the penalty phase constituted ineffective assistance of counsel.

**B**

Canaan contends that he is entitled to post-conviction relief because his trial counsel decided to try the habitual offender count prior to the penalty phase of the trial. He argues that had the appropriateness of the death penalty been considered prior to the habitual offender charge, the jury would have been unaware of his prior criminal history.[4] In contrast, by trying the habitual offender count first, Canaan says that he was shown to be even more dangerous than the facts in the guilt phase showed; that his prior contacts with the prison system had failed to deter or reform him; and that his criminal conduct was characterized by escalating seriousness.

Q. Did you view that for lack of a better word as running a risk the jury would see him as a cold blooded killer?
A. For lack of better words, yes.
Q. And you feared that that would be something that would make them more likely to impose the death sentence?
A. Yes.
R. 325–327.

**3.** Canaan does not argue that he was denied his constitutional right to testify. *Cf. Moore v. State,* 655 N.E.2d 1251, 1254 (Ind.Ct.App.1995); *Correll v. State,* 639 N.E.2d 677, 681 (Ind.Ct.App. 1994); *United States v. Curry,* 977 F.2d 1042, 1058 (7th Cir.1992), *cert. denied sub nom. Holland v. United States,* 507 U.S. 947, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993); *Underwood v. Clark,* 939 F.2d 473, 475 (7th Cir.1991); *United States v. Curtis,* 742 F.2d 1070, 1075 (7th Cir. 1984), *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (all examining whether defendant's constitutional right to testify may be waived by counsel as a matter of trial strategy). If Canaan did so argue, we might well find the issue waived for failure to have been raised at trial or on direct appeal.

**4.** As the State points out, had Canaan been called to testify at the penalty phase, as he now contends he should have been, his prior criminal history would have been before the jury, at least to the extent that it consisted of impeachable offenses. Br. of Appellee at 11.

The post-conviction court made certain findings of fact from which it concluded that trial counsel made strategic use of the habitual offender adjudication at the penalty phase and that the decision to try the habitual offender count in advance of the penalty phase would not likely have produced a different result in the death penalty phase.

■ Our review of the record indicates that there was evidence to support the post-conviction court's findings of fact as to strategic use of the habitual offender adjudication. In closing argument at the death penalty phase, trial counsel asked the jury not to recommend the death sentence because Canaan's "Habitual Criminal status ... will require him to spend the rest of his life in prison." R. 2359. Like the trial court, we find no evidence that changing the order of the habitual offender and death penalty phases would have produced a different result.

Our review of the post-conviction court's findings does not lead us to an opposite conclusion. Canaan cites no cases from this or any other jurisdiction holding counsel to have been ineffective for trying the habitual or recidivist offender phase of a capital murder trial before the death penalty phase and we have found none. While Canaan advances several cogent arguments as to why this may not have been the best of strategy, judicial scrutiny of counsel's performance is highly deferential; we eschew second-guessing the propriety of trial counsel's tactics. *Lowery,* 640 N.E.2d at 1041.

We affirm the post-conviction court's conclusion that Canaan has failed to demonstrate that the decision to try the habitual offender count prior to the death penalty phase constituted ineffective assistance of counsel.

C

Canaan contends that he is entitled to post-conviction relief because his trial counsel did not object to the State's introduction into evidence of a pair of pants and a matchbook which were found in his bedroom at his brother's apartment. He argues that the evidence was obtained in an illegal warrant-less search of the bedroom and "was more than a little damaging."

The post-conviction court made certain findings of fact from which it concluded that an objection on grounds of an illegal warrant-less search to the admission of the pants and a matchbook would have been overruled.

■ Our review of the record indicates that there was evidence to support the post-conviction court's findings of fact. Canaan's brother testified at trial that Canaan had been staying with the brother, his wife, and their children in their three bedroom apartment and that Canaan had been staying "[u]pstairs in my little boy's room." The brother's written consent to the search is of record. There was testimony at trial consistent with the trial court's finding that Canaan had abandoned the room and fled the jurisdiction.

■ Our review of the post-conviction court's findings does not lead us to an opposite conclusion. While the Fourth Amendment generally prohibits the warrantless entry of a person's home to conduct a search, an exception exists where voluntary consent has been given by a third party who has common authority over the premises. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 992–93, 39 L.Ed.2d 242 (1974). Where the common authority of a third party who is a landlord (or otherwise in a position similar to Canaan's brother here) is a disputed issue, the authority of the third party to consent to the search has been upheld when, by abandonment or otherwise, the person who is the target of the search no longer has a reasonable expectation of privacy in the premises. *See, e.g., Peterson v. State,* 674 N.E.2d 528, 533 (Ind.1996); *Myers v. State,* 454 N.E.2d 861, 864 (Ind.1983); *United States v. Williams,* 523 F.2d 64, 66 (8th Cir.1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976). Even if the third party does not have the requisite relationship to the premises, and therefore lacks the authority to give a valid consent, official reliance on the consent may validate the search if it was reasonable for the officers to believe the third party had the requisite relationship. *Illinois v. Rodriguez,* 497 U.S. 177,

179, 110 S.Ct. 2793, 2796–97, 111 L.Ed.2d 148 (1990).

We affirm the post-conviction court's conclusion that Canaan has failed to demonstrate that the failure by trial counsel to object to the admission of the pants and a matchbook constituted ineffective assistance of counsel.

### D

■ Canaan contends that he is entitled to post-conviction relief because his trial counsel did not object to impaneling a jury drawn from an adjoining county. He makes only a conclusory statement to the effect that this failure to object constituted ineffective assistance of counsel, without supporting argument or authority. Consequently, he waives appellate review of this contention. Ind.Appellate Rule 8.3(A)(7). *Cf. Kindred v. State,* 540 N.E.2d 1161, 1168 (Ind.1989) (failure to provide reasoning or authority for contention that change of venue violated defendant's constitutional rights resulted in argument being waived on appeal).

### E

Canaan contends that he is entitled to post-conviction relief because his trial counsel presented no evidence in mitigation of the death sentence. Under the Indiana death penalty sentencing scheme, in order for a jury to recommend and for a trial court to impose a sentence of death, each must find that any circumstances that exist in mitigation of the death sentence are outweighed by specified circumstances in aggravation. Ind. Code § 35–50–2–9(e) (1983 Supp.) Canaan argues that his trial counsel conducted insufficient investigation as to the existence of mitigating circumstances and, having discovered none, provided him with ineffective representation during the death penalty phase. In particular, Canaan contends that an adequate investigation would have revealed a background replete with drug abuse and domestic violence that resulted in brain damage. He also advances an argument that he had adjusted well to prison in the past,

spending most of his time behind bars "peaceably and productively." [5]

The post-conviction court made certain findings of fact from which it concluded that trial counsel did investigate and attempt to present mitigating evidence and that none of the mitigating evidence presented to the post-conviction court would likely have changed the sentencing decisions of the jury or trial court, as follows:

33. At the death penalty portion of the trial, the only evidence presented regarding the petitioner's mental condition at the time of the offense was the intoxication evidence which had been presented during the trial of the case on its merits in the guilt phase.

34. That prior to the trial both Counsel met with Petitioner and attempted to investigate his background and family life in an effort to produce mitigating evidence in the event of a conviction in the guilt phase.

35. Trial Counsel was provided with a sixteen page life history which outlined some of Petitioner's past substance abuse and attempts to obtain treatment.

36. Trial Counsel did attempt to contact Petitioner's family but was unable to get any cooperation from them concerning evidence to be presented on Petitioner's behalf in mitigation at the penalty phase. At the death penalty phase, Counsel presented testimony of the Executive Director of the Evansville Area Council of Churches as to the religious, moral and ethical objections held by most religious organizations to the concept of capital punishment.

37. That Counsel also presented from the same witness, religious testimony concerning the New Testament's inconsistency with modern day capital punishment. That at the original hearing of this [post conviction] cause on November 12, 1991, no evidence concerning Petitioner's institutional record or mental condition or medical condition was presented.

38. That only after a motion to reopen the post-conviction relief case and the pas-

---

5. This argument, that Canaan's prison record should have been presented at the death penalty phase, also appears inconsistent with Canaan's

contention that counsel was ineffective for trying the habitual offender count prior to the death penalty phase.

sage of approximately seventeen (17) months was any evidence presented from Petitioner's current counsel as to his mental or medical condition.

39. That the Court is not persuaded that extensive presentation of drug usage over a long period of time would be considered as mitigating evidence by a Vanderburgh County jury.

40. That the testimony of the neuropsychologist and neurologist offered by Petitioner at this hearing would be seriously undermined by Petitioner's recitation to them of how the crime in this case was actually committed.

41. That the Petitioner's description to them, which they used in forming their opinion, that the killing of Lori Bullock was accidental or that Petitioner couldn't remember significant portions of the killing, lacks probative value and is offensive to ordinary notions of common sense. The presentation of such evidence would hinder Petitioner's case and seriously undermine the probative effect of both Dr. Price and Dr. Margulies's testimony.

42. During various times while Petitioner was institutionalized, he continued to use drugs, participated in an escape attempt which resulted in a prison guard being assaulted, lost good time credit because of his own involvement in a violent incident which resulted in destruction of prison property and evidenced no serious or concentrated effort at rehabilitation.

43. The evidence on a good institutional adjustment Petitioner allegedly made during incarceration is not probative, and not likely to result in a different verdict.

44. That none of the mitigating evidence presented during this hearing would likely change the decision of the jury or the trial court regarding the appropriate penalty for this crime.

45. Co–Counsel for the penalty phase did investigate and make an effort to present mitigating evidence, did present some such evidence, and did argue vigorously against the imposition of the death penalty in this cause.

\*   \*   \*   \*   \*   \*

9. Defense Counsel did undertake an attempt to determine Petitioner's prior background to such a degree as would [ful]fill his obligation under State and Federal law.

10. The mitigating evidence proffered by the Petitioner did not deny the Petitioner a hearing that was fair and a result of the death penalty hearing in this case [that was] reliable.

R. 264–267.

■ Our review of the record indicates that there was evidence to support the post-conviction court's findings of fact. While it is clear that counsel did not perform an extensive review of Canaan's background, counsel testified that (i) he discussed Canaan's background with him and found out that "he didn't have a very good upbringing;" R. 288; (ii) he talked to Canaan's mother and attempted to enlist her to come to Evansville prior to trial so counsel could talk to her; and (iii) given the family's failure to cooperate, counsel "really had no ability to round up much on his background." R. 374. Co-counsel testified that Canaan provided her with information about his family life, his childhood, and his relationship with his parents and siblings. Co-counsel's affidavit in the post-conviction record is accompanied by (i) the notes of her discussion with Canaan on these subjects and on Canaan's substance abuse problems; and (ii) Canaan's sixteen page handwritten description of his upbringing. Counsel testified that he had previously been involved in a different death penalty case where the defendant had offered an insanity defense; that in that case, a great deal about that defendant's background—including the fact that that defendant had no previous record—was presented to the jury; that in the penalty phase of that case, counsel presented moral and policy arguments against the death penalty generally; and that in that case, the jury was unable to reach consensus on the sentencing recommendation and the trial court did not impose the death penalty. In contrast, counsel testified, Canaan was "very quiet-spoken," cooperative, "a model client." R. 388. As such, counsel "wasn't on actual notice that there was anything seriously wrong with him." R. 388.

There was evidence that under these circumstances, counsel adopted a strategy at the penalty phase not to have Canaan testify; instead to present testimony that the death penalty had no deterrent effect; to argue that Canaan was already subject to the equivalent of a life sentence; and to present testimony that imposition of the death penalty, violated the tenets and position of many American religious denominations.

Canaan presented the testimony of two experts at the post-conviction trial. Dr. David Price, a licensed clinical psychologist, testified that Canaan suffered from "an organic personality syndrome, alcohol intoxication, a cannabis delusional disorder, and cannabis intoxication" during the day prior to the time the crime was committed. R. 409. Dr. Price further testified that these conditions were "sufficient to affect [Canaan's] mentality, mentation, [and] capacity to conform his behavior to societal expectations" and that had Canaan been examined at the time "by a reasonable forensic expert, those conditions would have been obvious and he would have been most probably diagnosed." R. 481. Dr. Price further testified that because he did not question Canaan about the actual commission of the crime, he did not have an opinion about Canaan's mental status during the commission of the crime but assumed that Canaan's psychological conditions earlier in the day would have affected his behavior during the commission of the crimes. Dr. Sheldon Margulies, a neurologist, testified that Canaan suffered from "an acquired brain injury;" R. 459; and that he suffered from "a mental disease or defect." R. 497–98. On cross-examination, and over Canaan's objection, Dr. Margulies testified that during the course of the neurological examination, Canaan described how the crime occurred and that Dr. Margulies believed Canaan's account to be factually accurate. The record also contains several volumes containing all of Canaan's correctional records, including information that reflects both positively and negatively on his behavior in prison.

■ Our review of the post-conviction court's findings does not lead us to an opposite conclusion than that (i) trial counsel did undertake an attempt to determine Cannan's prior background. to such a degree as would fulfill his obligation under state and federal law and (ii) the mitigating evidence proffered by Canaan at the post-conviction hearing would not have produced a different result at the penalty phase of Canaan's trial. Counsel is permitted to make strategic judgments not to present certain types of mitigating evidence, including evidence of defendant's background. *See, e.g., Burger v. Kemp*, 483 U.S. 776, 795, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987); *Townsend v. State*, 533 N.E.2d 1215, 1233 (Ind.1989). *Burger* quotes *Strickland* as follows: "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Burger*, 483 U.S. at 795, 107 S.Ct. at 3126 (quoting *Strickland*, 466 U.S. at 690–691, 104 S.Ct. at 2066). The post-conviction court's findings support such a conclusion here; we are not led to the opposite finding as we were in *Averhart v. State*, 614 N.E.2d 924, 930 (Ind. 1993), and *Burris v. State*, 558 N.E.2d 1067, 1074 (Ind.1990).

Even if we were to find deficient performance of counsel, the trial court's findings do not lead us to the opposite conclusion than that the mitigating evidence proffered by Canaan at the post-conviction hearing would not have produced a different result at the penalty phase of Canaan's trial. *See, e.g., Lowery v. State*, 547 N.E.2d 1046, 1059 (1989), and *Fleenor v. State*, 514 N.E.2d 80, 89 (Ind.1987), where this court affirmed death sentences notwithstanding the presence of mitigating circumstances of difficult childhood and mental condition; *Trueblood v. State*, 587 N.E.2d 105, 110 (Ind.1992), where this court affirmed a death sentence notwithstanding the presence of evidence of a mitigating circumstance of good behavior in prison.

We affirm the post-conviction court's conclusion that Canaan has failed to demonstrate that trial counsel's performance with respect to the investigation and presentation of mitigating circumstances constituted ineffective assistance of counsel.

## II

Canaan contends that the State negligently handled and intentionally destroyed material evidence. He argues that such alleged negligent handling and intentional destruction violated generally his rights under the United States and Indiana Constitutions and violated specifically his rights to (i) a fair trial; (ii) confront witnesses against him; (iii) be proven guilty beyond a reasonable doubt; and (iv) fundamental fairness at the penalty phase of his trial.

At trial, a key piece of evidence placing Canaan at the scene of the crime was a fingerprint lifted from a box of Red Cross spaghetti. The box was among a number of personal items found outside the victim's home, including packages of previously frozen meat which had thawed and dripped blood over the spaghetti box and other items.

On direct appeal, Canaan argued that he was entitled to relief because the State had not established an adequate foundation and chain of custody of the fingerprints. He also contended that the evidence may have been tampered with or falsified. We decided these claims against Canaan on direct appeal. *Canaan,* 541 N.E.2d at 903.

In this appeal, Canaan argues that he is entitled to post-conviction relief because the State negligently handled and intentionally destroyed the spaghetti box. Canaan accompanies his new argument with a lengthy discussion of established and proposed standards of review for claims of negligent and intentional destruction of evidence and certain constitutional rights implicated thereby. However, Canaan fails to address two threshold issues, either of which is dispositive of this claim.

■ First, it was the fingerprint evidence, and not the spaghetti box, that was presented to the jury to demonstrate that Canaan had been at the scene of the crime. That is, the entire relevance of the spaghetti box was that it was the source of Canaan's fingerprints. But we held on direct appeal that the fingerprints had been properly admitted into evidence. *Id.* That issue is not available for re-litigation in post-conviction proceedings. *See* P–C.R. 1(8); *Lamb v. State,* 511 N.E.2d 444, 447 (Ind.1987); *Ingram v. State,* 508 N.E.2d 805, 807 (Ind. 1987).

■ Even if the spaghetti box has some independent evidentiary significance from the fingerprints taken from it, Canaan is not entitled to post-conviction relief on these grounds. An available grounds for relief not raised at trial or on direct appeal is not available as a grounds for collateral attack. *See* P–C.R. 1(8); *Adams v. State,* 575 N.E.2d 625, 628 (Ind.1991); *Wickliffe v. State,* 523 N.E.2d 1385, 1388 (Ind.1988); *Lane v. State,* 521 N.E.2d 947, 948 (Ind.1988). It is indisputable that any issue about the spaghetti box was available at trial and on direct appeal. Canaan cannot raise the issue now.

## III

■ Canaan alleges that he is entitled to post-conviction relief because the jury was improperly instructed on the burden of proof at both the guilt and habitual offender phases of his trial. These contentions were not presented to the trial court, on direct appeal, or to the post-conviction court. As the State correctly observes, claims not advanced until appellant's brief in an appeal from the denial of post-conviction relief are waived. *Howard v. State,* 467 N.E.2d 1, 2 (Ind.1984). Canaan also alleges that the trial court improperly granted challenges for cause during voir dire. Again, these contentions were not presented to the trial court, on direct appeal, or to the post-conviction court. These claims are also waived. *Id.*[6]

---

6. Canaan seeks to avoid application of the waiver doctrine by arguing that it does not apply here because "these challenges ... raise fundamental issues." Reply Br. of Pet'r–Appellant at 11. As such, he makes a bold assertion of the fundamental error doctrine. It is true that we have acknowledged an exception to the waiver rule in circumstances where the trial court committed "fundamental error." But we view this exception as an extremely narrow one, available only "when the record reveals clearly blatant violations of basic and elementary principles [of due process], and the harm or potential for harm [can]not be denied." *Warriner v. State,* 435 N.E.2d 562, 563 (Ind.1982). While concerns over due process do sometimes merit invocation of a fundamental error exception to the contemporaneous objection rule *on direct appeal,* we

## IV

Canaan alleges that he is entitled to post-conviction relief in the form of reversal of his conviction for Criminal Deviate Conduct. Specifically, he contends that his conviction for Attempted Criminal Deviate Conduct was invalid because (i) the trial court failed to instruct the jury on the elements of the offense; and (ii) there was insufficient evidence to show beyond a reasonable doubt that the acts constituting attempted criminal deviate conduct took place prior to the victim's death. As the post-conviction court properly concluded, this issue was decided adversely to Canaan on direct appeal. *Canaan*, 541 N.E.2d at 906. It is not available for relitigation here. *See* P–C.R. 1(8); *Lamb v. State*, 511 N.E.2d at 447; *Ingram v. State*, 508 N.E.2d at 807.

### Conclusion

We affirm the trial court's denial of Keith B. Canaan's petition for post-conviction relief.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

think its availability as an exception to the waiver rule in post-conviction proceedings is generally limited to those circumstances we set forth in *Bailey v. State*, 472 N.E.2d 1260, 1263 (Ind. 1985): "[D]eprivation of the Sixth Amendment right to effective assistance of counsel, or . . . an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal." Here, as noted in the text, Canaan did not raise these issues before the trial, direct appeal, or post-conviction courts; he raises them for the first time on appeal from the denial of post-conviction relief. We are unable to conclude that these issues amount to fundamental error (which must be "blatant") when none of trial counsel, direct appeal counsel, or post-conviction counsel in this case identified them as such.