**Jeremy A. LANE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A02–1010–CR–1156.**

Court of Appeals of Indiana.

Aug. 26, 2011.

Christopher A. Cage, Anderson, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Following a jury trial, Jeremy Lane was convicted of Attempted Theft,[1] a class D felony, and subsequently sentenced to the maximum term of three years. Lane presents three issues for our review:

1. Did Lane's trial counsel render ineffective assistance?
2. Does the rule of lenity require reversal of Lane's conviction for attempted theft or reduction of his sentence in accordance with the proportionality clause?
3. Is Lane's sentence inappropriate?

We affirm.

During the evening hours of January 26, 2009, Lane entered the K–Mart in Elwood, Indiana, and bought several small items and a Mountain Dew. While checking out, Lane started a conversation with the cashier, Erika Bragg, talking to her in a "flirty way". *Transcript* at 59. Lane was wearing a big jacket with three pockets. Lane then left the store. A few minutes later, Lane came back into the store and approached the customer service desk where he complained that there was a foreign substance in the drink he had just purchased. The substance appeared to be tobacco chew. Lane was given a Dr. Pepper in exchange, and he again left the store.

Lane apparently reentered the store because a short time later, another K–Mart employee, Samantha Cross, encountered Lane in the fitting room trying on pants. As Cross worked her way through the store straightening and putting items away, she encountered Lane again in the sporting goods section of the store, standing at the end of an aisle where knives were displayed. Cross could see that Lane was holding something in his left hand and making a motion with his right hand. Cross also heard the crackling of plastic packaging leading her to believe that a package was being tampered with. Cross finished what she was doing and

1. Ind.Code Ann. § 35–43–4–2 (West, Westlaw current through 2011 Pub. Laws approved & effective through 6/28/2011) (theft); Ind.Code Ann. § 35–41–5–1 (West, Westlaw current through 2011 Pub. Laws approved & effective through 6/28/2011) (attempt).

then headed toward the front of the store. As Cross started walking up the main aisle, Lane "came out of nowhere" and approached her from the side. *Id.* at 40. Lane showed Cross a knife and then made an unsolicited statement that he had previously purchased it at K–Mart. Lane then walked away. In the area of the sporting goods section where Lane had been standing, Cross found a torn-open, empty knife package lying on the floor. The package was consistent with the packaging for a knife like that which Lane had shown Cross. Cross had not seen the package earlier in the evening as she was working her way through the sporting goods department straightening up. Cross reported her observations to an attendant at the service desk and a manager was called.

Andrea Burt, the night manager for K–Mart, observed Lane walking from aisle to aisle through the store. Burt followed Lane and monitored his actions. At one point, while she was an aisle away from Lane, Burt heard a crackling noise in the gaming aisle. As Burt approached Lane, he turned around and handed her an open package for a cell phone case and explained that he had found the package on the shelf. The package had been cut and ripped, but the cell phone case was still inside. Burt put the package on the counter in the electronics department. Lane then told Burt that he had lost his cell phone and asked her to call his number. As she did so, Lane headed back to the sporting goods section of the store. Eventually Burt moved away from the electronics department counter.

By that time, Bragg's shift had ended and she had heard about suspicious activity in the store. Bragg headed to sporting goods where she observed Lane hunched over in an aisle with his back to her. Bragg could hear the crackling of plastic packaging. Bragg confronted Lane in a loud voice and accused him of stealing. Lane was startled and turned around. Lane was holding a half-open, damaged binocular package in one hand and a knife in the other. Lane told Bragg that he was not stealing anything, but that he just wanted to inspect the item. Bragg followed Lane to the front of the store and yelled at him that she was going to call the police. Lane walked quickly and with his head down. Employees who observed Lane could not see any merchandise in Lane's hands or in his coat. Bragg followed Lane outside and took down the license plate number from the car in which he drove away. Lane went home and was home for approximately five minutes when his girlfriend arrived. She informed Lane that the police were looking for him. Lane then got back in his vehicle and headed to the police station.

A short time after Lane left the K–Mart, Officer Phillip Caldwell of the Elwood Police Department observed Lane driving at a high rate of speed through town, so he initiated a traffic stop. Officer Caldwell was familiar with Lane's vehicle and was aware that he was a suspect in a possible theft given the report from the employees at the K–Mart store. Officer Caldwell thus advised Lane of his Miranda rights. Thereafter, Lane agreed to talk to Officer Kara Barton, who was investigating the reported theft from K–Mart. Lane admitted that he had been at K–Mart that night and that he possessed a knife. He, however, denied stealing anything and that he had pointed a knife at anyone. At trial, Lane testified that he used a knife to open a package of binoculars, but claimed that he did not steal them, he only wanted to inspect them.

A survey of the K–Mart store after Lane left revealed six cut-open, empty merchandise packages. The packages were for small items such as a pocket

knife, an MP3 player, a digital timer, a digital camera, batting gloves, and a flashlight. The package for the cell phone case was also gathered from the counter in the electronics department where Burt had placed it, but the case was no longer in the packaging. None of the items were ever recovered—there were no items found in the store, there were no missing items found during a search of Lane's vehicle or of his person which were conducted as part of the traffic stop, and no search was ever conducted at Lane's home.

On January 27, 2009, the State charged Lane with intimidation as a class C felony. On March 6, 2009, the State added a second charge of theft, a class D felony. A jury trial commenced on August 3, 2010. The jury acquitted Lane of the intimidation charge, but found him guilty of attempted theft, a class D felony. A sentencing hearing was held on September 13, 2010. At that hearing, the court was informed that Lane had failed a drug screen by testing positive for methamphetamine. Lane explained to the court that his girlfriend had a prescription for methamphetamine and he had taken it out of her purse.[2] The court noted that Lane had just completed a drug court program stemming, in part, from other burglary and theft charges and that his criminal history was an aggravating circumstance that supported a three-year sentence. Lane now appeals.

### 1.

■ Lane argues that his trial counsel was ineffective for failing to tender an instruction on the lesser included offense of conversion, a class A misdemeanor that carried a sentence of one year or less.[3] In order to prevail on a claim of ineffective assistance of counsel, Lane must demonstrate both that his counsel's performance was deficient and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *French v. State*, 778 N.E.2d 816 (Ind.2002); *see also Taylor v. State*, 840 N.E.2d 324 (Ind.2006) (the failure to satisfy either component will cause an ineffective assistance claim to fail). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816. To establish the requisite prejudice, Lane must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Smith v. State*, 765 N.E.2d 578, 585 (Ind.2002). Further, we note:

> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Id.*

■ Lane's sole attack on his trial counsel's performance is that his trial

---

2. The court explained to Lane that one cannot have a prescription for methamphetamine.

3. Having presented the issue of ineffective assistance of counsel on direct appeal, Lane is foreclosed from bringing such claim in a post-conviction proceeding. *See Woods v. State*, 701 N.E.2d 1208 (Ind.1998).

counsel did not tender an instruction on conversion as a lesser included offense of theft.[4] During closing argument, Lane's trial counsel attempted to discount the testimony of each of the State's witnesses by offering reasonable explanations for what he argued was only their perception of events, not reality. Lane's counsel acknowledged that Lane was seen opening a package of binoculars and that Lane did not deny such fact. Lane's counsel argued that Lane did not intend to deprive K–Mart of any value of the binoculars, citing his testimony that he only wanted to inspect them. Lane's counsel also focused on the fact that no one saw Lane carry any of the items out of the store as establishing his lack of intent to commit theft.

It is clear from the record that Lane's counsel employed an "all or nothing" strategy, asking the jury to find that the evidence did not support a finding beyond a reasonable doubt that Lane intended to deprive K–Mart of the value or use of any part of its property. Without the instruction on conversion, the jury was not given an alternative other than to convict as charged (theft) or acquit. We find that given the facts of this case and Lane's testimony, counsel's "all or nothing" strategy was completely reasonable.

Our Supreme Court has previously held that "a tactical decision not to tender a lesser included offense does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense." *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind.1998) (citing *Page v. State*, 615 N.E.2d 894 (Ind.1993)). We will not second-guess counsel's strategy "through the distortions of hindsight." *Id.* (quoting *Page v. State*, 615 N.E.2d at 896). Here, if Lane's counsel had requested an instruction on conversion, Lane would have been entitled to the instruction.[5] Lane's counsel chose a strategy, however, that, if it had worked, would have left Lane with no criminal conviction. Although risky, counsel's strategy given the facts of this case was not unreasonable. Lane has failed to establish that his trial counsel rendered ineffective assistance.

■ To the extent Lane argues that failure to give an instruction on conversion amounted to fundamental error, his claim fails. Essentially, Lane's argument is that the trial court was required to *sua sponte* give the instruction on conversion despite counsel's strategic decision. Our Supreme Court has rejected this notion, holding that a trial court's failure to *sua sponte* give instructions on lesser-included offenses does not constitute fundamental error. *See Metcalf v. State*, 451 N.E.2d 321 (Ind. 1983); *see also Sarwacinski v. State*, 564 N.E.2d 950 (Ind.Ct.App.1991). To be sure,

---

4. Conversion is defined as: "A person who knowingly or intentionally exerts unauthorized control over property of another commits criminal conversion, a class A misdemeanor." I.C. § 35–43–4–3(a) (West, Westlaw current through 2011 Pub. Laws approved & effective through 6/28/2011). Theft includes the additional element that the person have the intent to deprive the other person of any part of the property's value or use. *See* I.C. § 35–43–4–2(a). Indeed, courts have consistently held that criminal conversion is an inherently lesser included offense of theft because it can be established by proof of less than all of the material elements of theft. *See Shouse v. State*, 849 N.E.2d 650 (Ind.Ct.App.2006), *trans. denied.*

5. In his Appellant's Brief, Lane all but admits that the evidence (especially his admission that he cut open the package for the binoculars so that he could inspect them) established conversion. *Appellant's Brief* at 9 ("If counsel would have simply offered the lesser included instruction concerning Conversion, then there is little doubt that the jury would have returned a guilty verdict on conversion.").

our Supreme Court stated in *Helton v. State*, 273 Ind. 211, 213, 402 N.E.2d 1263, 1266 (1980) that "the entitlement to included offenses instructions, in an appropriate case, is not a fundamental right but rather is one that must be claimed and the claim preserved, in accordance with established rules of trial and appellate procedure." The omission of an instruction on the lesser-included offense of conversion did not constitute fundamental error.

## 2.

Lane argues that his conviction must be set aside because the penalty for attempted theft violates the proportionality clause set forth in article 1, section 16 of the Indiana Constitution. Specifically, Lane contends that his conviction for attempted theft was proven by the same material elements used to establish the lesser offense of criminal conversion. Lane therefore asserts that the classification of attempted theft as a class D felony violates the proportionality clause because that offense is "one and the same" as criminal conversion as a class A misdemeanor. *Appellant's Brief* at 11. Lane requests that his conviction for attempted theft be vacated or that his sentence be reduced to the lesser penalty for a class A misdemeanor.

Article 1, section 16 of the Indiana Constitution requires that "[a]ll penalties shall be proportioned to the nature of the offense." Our Supreme Court has determined that section 16 applies only " 'when a criminal penalty is not graduated' " and proportioned to the nature of an offense. *Conner v. State*, 626 N.E.2d 803, 806 (Ind. 1993) (quoting *Hollars v. State*, 259 Ind. 229, 236, 286 N.E.2d 166, 170 (1972)).

■ Indiana courts have consistently maintained that " '[t]he nature and extent of penal sanctions are primarily legislative considerations.' " *Balls v. State*, 725 N.E.2d 450, 453 (Ind.Ct.App.2000) (quoting *State v. Moss–Dwyer*, 686 N.E.2d 109, 111 (Ind.1997)), *trans. denied.* Our separation of powers doctrine requires we take a highly restrained approach when reviewing legislative prescriptions of punishments. *State v. Moss–Dwyer*, 686 N.E.2d 109. Thus, our review of a legislatively sanctioned penalty is very deferential, and we will not disturb the legislature's determination except upon a showing of clear constitutional infirmity. *Balls v. State*, 725 N.E.2d 450.

■ A court is "not at liberty to set aside the legislative determination as to the appropriate penalty merely because it seems too severe." *State v. Moss–Dwyer*, 686 N.E.2d at 112. A sentence violates the proportionality clause where it is so severe and entirely out of proportion to the gravity of the offense committed so as to " 'shock public sentiment and violate the judgment of a reasonable people.' " *Pritscher v. State*, 675 N.E.2d 727, 731 (Ind.Ct.App.1996) (quoting *Cox v. State*, 203 Ind. 544, 549, 181 N.E. 469, 472 (1932)).

■ As noted above in footnote 4, *supra*, the element that distinguishes theft from conversion is the intent to deprive the other person of the property's value or use. This element is not required to establish the offense of conversion. Conversion is thus an inherently included offense of theft. *See Shouse v. State*, 849 N.E.2d 650. In other words, only if a jury concludes that the evidence established beyond a reasonable doubt the additional element of intent to deprive will a theft conviction result. It is the level of intent associated with the exertion of unauthorized control that differentiates the two offenses and thereby supports the difference in the consequences associated with each.

We find Lane's reliance on *Morris v. State*, 921 N.E.2d 40 (Ind.Ct.App.2010), *trans. denied*, to be unpersuasive. Lane relies on *Morris* in asserting that the crimes of theft and conversion are "almost indistinguishable" or, given the facts of this case, "one and the same". *Appellant's Brief* at 11. In *Poling v. State*, 938 N.E.2d 1212, 1216 (Ind.Ct.App.2010), this court rejected the language in *Morris* as dicta and further noted that, even if not dicta, "theft and criminal conversion have been defined as separate crimes by our legislature." We agree that the crimes are separate crimes. In *Morris*, the court considered language from *Irvin v. State*, 501 N.E.2d 1139, 1142 n. 3 (Ind.Ct.App.1986) that stated, " 'from a practical standpoint the offenses appear to be one and the same.' " 921 N.E.2d at 42. Despite this pronouncement in 1986, our General Assembly has not merged the two offenses, amended the statutes to change the material elements of the two offenses, or chosen to apply the same penalty to the two offenses. Hence it is apparent that our General Assembly considers the crimes as two separate offenses deserving different levels of punishment. *See Poling v. State*, 938 N.E.2d 1212. Indeed, the *Morris* court noted that "[d]espite some courts' suggestions that there is no articulable difference between the elements of conversion and theft, the fact remains that our legislature identified them as two separate crimes with two different penalty ranges." *Morris v. State*, 921 N.E.2d at 43.

In fact, time and again, we have found that an evidentiary distinction exists between the two offenses in practical application. *See Shouse v. State*, 849 N.E.2d 650 (finding a conversion instruction not warranted by the evidence where there was no serious evidentiary dispute that the defendant intended to deprive the owner of the truck's value or use); *M.Q.M. v. State*, 840 N.E.2d 441 (Ind.Ct.App.2006) (finding the evidence insufficient for theft but sufficient for conversion where there was no evidence that the juvenile intended to deprive his parents of the value or use of the vehicle). As noted above, the evidentiary distinction between theft and conversion is the intent associated with the taking to establish theft. The different penalties for the two offenses are proportionate to the intent required. There is nothing "incongruous or unfair" about the legislature's decision to punish the two crimes differently. *Jones v. State*, 766 N.E.2d 1258, 1265 (Ind.Ct.App.2002), *trans. denied*, *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d 1201 (Ind.2007). The penalty for class D felony theft is not unconstitutionally disproportionate to that of class A misdemeanor criminal conversion.

3.

Lane argues that his maximum three-year sentence[6] is inappropriate. Lane asks that we revise his sentence to one year on in-home detention and two years of probation, which was the sentence recommended by the probation department.

We have the constitutional authority to revise a sentence if, after careful consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of the offense and character of the offender. See Ind. Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218. Even if a trial court follows the appropriate procedure in arriving at its

---

6. Ind.Code Ann. § 35–50–2–7 (West, Westlaw current through 2011 Pub. Laws approved & effective through 6/28/2011) ("A person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1 ½) years.").

sentence, we maintain the constitutional power to revise a sentence we find inappropriate. *Hope v. State*, 834 N.E.2d 713 (Ind.Ct.App.2005). Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court brings to such determinations. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007). Our Supreme Court has provided the following guidance for our review of sentences: "[A]ppellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.2008). The burden of persuading us that the sentence is inappropriate is on the defendant. *Rutherford v. State*, 866 N.E.2d 867.

As to the character of the offender, Lane's criminal history is quite telling. Lane has had several contacts with the criminal justice system between 1993 and 2005. Six charges of class D felony theft in 1993 resulted in an "informal adjustment". *Appellant's Appendix, Vol. II* at 33. In 2000, Lane pleaded guilty to illegal consumption of alcohol and was sentenced to supervised probation, including a substance abuse class. A month later, in March 2000, Lane pleaded guilty to possession of marijuana and sentencing was "withheld for one year on condition of good behavior and one year probation." *Id.* Three counts of misdemeanor conversion were dismissed in 2002 upon Lane entering the military. Lane was demoted and received an "Other than Honorable Discharge" from the Army in 2005 due to his drug use.

Following his discharge from the Army, Lane was charged with possession of a controlled substance and possession of paraphernalia in Cause No. 48D03–0510–FD–467; with possession of a controlled substance and battery resulting in bodily injury in Cause No. 48D03–0510–FD–466; and with burglary and theft in Cause No. 48D03–0509–FB–450. In December 2005, Lane pleaded guilty as charged in these three causes, judgment of conviction was entered, but sentencing was withheld upon Lane's successful completion of the Madison County Drug Court Program. Although Lane completed the drug program in June 2007, he admitted to using opiates prior to his jury trial in the instant case and to using marijuana just after his jury trial. Lane tested positive for methamphetamine at sentencing.

In its sentencing statement, the trial court detailed Lane's criminal history and emphasized his past and current drug use. To be sure, Lane admitted to using marijuana since his trial ended and tested positive for methamphetamine at the sentencing hearing. This behavior clearly demonstrates that Lane has a substance abuse problem and his most recent experience with the criminal justice system (the instant case) did nothing to change his behavior. We will not second-guess the trial court's assessment of the circumstances, and conclude that the record before us supports the sentence imposed.

As for the nature of the offense, we recognize that Lane did not cause harm or physical injury to any person. Lane was, however, in possession of a knife as he perused the store, opening packages. Assuming without deciding that this was not the worst of offenses, when considered with Lane's character, we cannot say that the three-year sentence imposed by the trial court is inappropriate.

Judgment affirmed.

BAILEY, J., and BROWN, J., concur.