Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



APPELLANT PRO SE:

**KEITH SCRUGGS**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEITH SCRUGGS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1307-PC-341 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
CRIMINAL DIVISION, ROOM 6
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-9806-PC-92690

**June 5, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Keith Scruggs ("Scruggs") was convicted in 1999 of two counts of murder, and his convictions were affirmed on direct appeal. Over ten years later, in 2010, Scruggs filed a petition for post-conviction relief, which the post-conviction court denied. Scruggs appeals *pro se* and claims: (1) that the post-conviction court erred in denying Scruggs's claims of fundamental error; (2) that the post-conviction court erred in finding that Scruggs was not denied the effective assistance of trial counsel; and (3) that the post-conviction court erred in finding that Scruggs was not denied the effective assistance of appellate counsel.

We affirm.

**Facts and Procedural History**

The facts underlying Scruggs's convictions were set forth in the opinion of our supreme court in Scruggs's direct appeal as follows:

> The defendant with his friend and girlfriend went to another friend's house. The defendant entered the residence which was occupied by several people. Upon recognizing one of the occupants, Lucas, as a man who had robbed him five or six months before, the defendant pulled out a revolver. One person asked the defendant if "this was a joke," to which the defendant replied, "this is no [expletive deleted] joke." Record at 225. Lucas ran into a bedroom and shut the door. As the defendant tried to open the door, Lucas tried to hold it closed. The defendant finally forced the door open and shots were fired as he entered the bedroom. Lucas died from multiple gunshot wounds. Oliver, another occupant of the room, was killed by a single bullet wound to her head. No witnesses testified as to who fired the shots, but there was no evidence that anyone else in the bedroom had a gun other than the defendant.

Scruggs v. State, 737 N.E.2d 385, 386-87 (Ind. 2000).

On direct appeal, Scruggs claimed that "the inference that he was the shooter was merely speculation and conjecture and that the State's witnesses were not sufficiently

credible to support the convictions." Id. at 387. Our supreme court rejected this contention and held that there was sufficient evidence to support Scruggs's convictions. Id. Scruggs also claimed that "his sentences of sixty years for each murder to run consecutively [we]re manifestly unreasonable," a contention which the court also rejected. Id.

On June 1, 2010, almost ten years after our supreme court affirmed Scruggs's convictions and sentence on direct appeal, Scruggs filed a *pro se* petition for post-conviction relief. Scruggs filed an amended petition on March 13, 2012. In his petition, Scruggs claimed that the prosecuting attorney committed misconduct amounting to fundamental error and that he was denied the effective assistance of both trial counsel and appellate counsel. The post-conviction court held a hearing on Scruggs's petition on October 11, 2012. At this hearing, Scruggs called as witnesses his trial and appellate counsel. He also presented the affidavits of two individuals he claimed should have been called as alibi witnesses. The post-conviction court entered findings of fact and conclusions of law denying Scruggs's post-conviction petition on June 7, 2013. Scruggs now appeals *pro se*.

**Post-Conviction Standard of Review**

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction

3

petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd of reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

## I. Fundamental Error

Scruggs first claims that the prosecuting attorney committed misconduct in several respects, mostly involving statements regarding Scruggs's alibi defense and the credibility of his alibi witnesses. Scruggs claims that the prosecuting attorney's behavior amounted to fundamental error. Despite some earlier inconsistency in the precedent of

our supreme court,[1] the court has since clarified that even claims of fundamental error are not reviewable in post-conviction proceedings when presented as free-standing claims of error. Specifically, in Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002), the court stated in no uncertain terms that "it [is] wrong to review [a] fundamental error claim in a post-conviction proceeding." Instead, the fundamental error rule applies only to direct appeals. Id. "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." Id. (citing Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997)); see also State v. Hernandez, 910 N.E.2d 213, 216 (Ind. 2009) ("A petitioner for post-conviction relief cannot avoid the application of the waiver doctrine by arguing that it does not apply because the challenge raises fundamental error."); Conner v. State, 829 N.E.2d 21, 25 (Ind. 2005) (holding that where petitioner made no claim that his claim was not known or available to him in prior proceedings, his claim that he could present claim of fundamental error in successive post-conviction petition was "simply wrong.").

Here, Scruggs presents his claims of prosecutorial misconduct as free-standing claims of fundamental error, and does not explain how his claims were "demonstrably

---

[1] Compare Snider v. State, 468 N.E.2d 1037, 1039 (Ind. 1984) ("[I]t is through a showing of fundamental error that the post-conviction court can bypass an obstacle to reaching the merits of a free standing claim erected by a prior procedural default.") and Propes v. State, 550 N.E.2d 755, 759 (Ind. 1990) ("fundamental error is cognizable in a petition for post-conviction relief even absent preliminary proof of ineffective assistance of counsel.") with Bailey v. State, 472 N.E.2d 1260, 1263 (Ind. 1985) (holding that "in a post-conviction petition an allegation of the denial of the petitioner's due process rights may not be raised in the 'free standing' form of an allegation of fundamental error.") and Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997) (stating that the availability of the fundamental error exception to the waiver rule post-conviction proceedings is generally limited to deprivation of the right to effective assistance of counsel, or an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal).

unavailable" to him on direct appeal. His claims of fundamental error are therefore not cognizable in a petition for post-conviction relief. See Sanders, 765 N.E.2d at 592.

## II. Effective Assistance of Trial Counsel

Scruggs also contends that the post-conviction court clearly erred in denying his claim of ineffective assistance of trial counsel. Our supreme court summarized the law regarding claims of ineffective assistance of trial counsel in Timberlake v. State as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

6

*A. Failure to Object*

Scruggs first claims that his trial counsel was ineffective for failing to object to certain statements by the prosecuting attorney—the same statements he claims constituted fundamental error. Of course, "to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." Overstreet v. State, 877 N.E.2d 144, 155 (Ind. 2007); accord Benefield v. State, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011).

The first statement by the prosecuting attorney that Scruggs claims was improper was a reference to the fact that certain individuals, who were allegedly with Scruggs at a different location during the time of the shootings, did not testify as alibi witnesses. At Scruggs's trial, his counsel presented two alibi witnesses: Amber Brookins ("Brookins"), who is the mother of Scruggs's child, and Felicia Bonner ("Bonner"). Both Brookins and Bonner testified that, at the time of the shooting, Scruggs was with them, Damien Golder ("Golder"), and Scruggs's uncle Clarence Hudgins ("Hudgins"), all of whom were helping Brookins move to a new address. Although they were allegedly with Scruggs at the time of the shooting, neither Golder nor Hudgins testified as alibi witnesses. During the State's closing argument, the prosecuting attorney referred to this fact, stating, "They didn't come in and testify, did they? I would think Uncle Clarence has a stake in this, but he didn't come in and testify." Appellant's App. p. 198.

In his claim for post-conviction relief, Scruggs claims that this was prosecutorial misconduct and that his trial counsel was constitutionally ineffective for failing to object to this statement because it suggested that Scruggs bore the burden of proving his alibi

7

defense when, in fact, the State bore the burden of disproving the alibi defense. See Harris v. State, 617 N.E.2d 912, 915 (Ind. 1993) (noting that an alibi is an affirmative defense and, once invoked by the defendant, the State has the burden of proving that the defendant was in fact at the scene of the crime and committed the offense), *overruled on other grounds by* Wright v. State, 690 N.E.2d 1098, 1099 (Ind. 1997)).

With regard to the fact that Scruggs's trial counsel did not object, Scruggs has failed to show that this action fell below an objective standard of reasonableness. In fact, Scruggs's trial counsel testified at the post-conviction hearing that although he could not precisely recall why he did not object to this statement by the prosecuting attorney (which is not surprising given that a decade had elapsed since the trial), he sometimes chose not to object to certain statements for fear that the objection "might overemphasize what counsel is saying." Post-Conviction Tr. p. 21.

And even if this lack of an objection did constitute deficient performance, we cannot say that Scruggs was prejudiced thereby. The jury was instructed that the State bore the burden of disproving the alibi defense and that Scruggs was not required to present any evidence to prove his innocence or explain anything, and we presume that the jury followed the instructions it was given. Tormoehlen v. State, 848 N.E.2d 326, 332 (Ind. Ct. App. 2006). Accordingly, we agree with the post-conviction court that Scruggs has not established that he was denied the effective assistance of trial counsel by his trial counsel's failure to object to the statement noting that certain alibi witnesses did not testify.

8

Moreover, to the extent that Scruggs now claims that the prosecuting attorney made an improper comment on the truthfulness of his alibi witnesses, we discern no error. Here, the prosecuting attorney did not state that Scruggs's alibi witnesses were untruthful. He simply commented on the fact that certain witnesses to Scruggs's alibi defense were not called to testify, and made no comment at all on the fact that Scruggs chose not to testify on his own behalf. See Dumas v. State, 803 N.E.2d 1113, 1118 (Ind. 2004) (noting that comments by the prosecutor on the lack of defense evidence is proper so long as the State focuses on the absence of evidence to contradict the State's evidence and not on the accused's failure to testify).

Scruggs also claims that his trial counsel should have objected to the following statement by the prosecuting attorney during closing argument regarding Scruggs's alibi defense: "It's evidence that you could have heard from the very first witness, and on through the State's case." Appellant's App. pp. 198-99. Scruggs claims this statement was an improper comment on his post-arrest silence. We fail to see how this comments on Scruggs's silence at all. Moreover, we agree with the State that the prosecuting attorney was attempting to explain to the jury that the State can rebut an alibi defense by relying on its case-in-chief. See Stephenson v. State, 742 N.E.2d 463, 498 (Ind. 2001) (noting that the State is not required to rebut a defendant's alibi directly and may instead disprove the alibi by proving its own case-in-chief beyond a reasonable doubt) (citing Lott v. State, 690 N.E.2d 204, 209 (Ind. 1997)). Indeed, the prosecutor's statements referred to the State's case-in-chief, i.e. "from the very first witness . . . on through the State's case." Appellant's App. pp. 198-99.

Scruggs further argues that his trial counsel should have objected to what he claims was improper vouching for the credibility of the State's witnesses by the prosecuting attorney during the State's closing arguments. Again, we disagree. Scruggs is correct in asserting that it is improper for a prosecutor to make an argument which takes the form of personally vouching for a witness. Gaby v. State, 949 N.E.2d 870, 880-81 (Ind. Ct. App. 2011). As we explained in Gaby, it is unethical for a lawyer in trial to "'"assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of the accused[.]"'" Id. (quoting Ind. Professional Conduct Rule 3.4(e)). A prosecutor may, however, comment on the credibility of a witness if the assertions are based on reasons which arise from the evidence presented at trial. Id.

Here, the prosecuting attorney told the jury that, when it considered the testimony of the State's witnesses, "there [wa]s absolutely no reason for them to come in and lie. What they came in here and told you was the truth, that on the 1st of June, 1998, Keith Scruggs walked into 4015 Kitley and killed two people, Londa Oliver and Cheron Lucas." Tr. pp. 725-26. This statement comments on the evidence, i.e., the testimony of the State's witnesses, and does not assert a personal knowledge of the facts. Nor does it directly vouch for the credibility of the witnesses; it simply asks the jury to consider their testimony. Accordingly, we cannot say that Scruggs's trial counsel was ineffective for not objecting to this statement in the State's closing argument. Assuming that it was improper, we also cannot say that the result of the trial would have been different but for

10

these statements.  The jury was properly instructed on the burden of proof and that the arguments of counsel were not evidence.  We therefore agree with the post-conviction court that Scruggs has not established that his trial counsel was ineffective for failing to object to these statements during the State's closing argument.

B. *Failure to Call Alibi Witnesses*

Scruggs also claims that his trial counsel was ineffective for failing to call Hudgins and Golder as additional alibi witnesses.  Scruggs claims that the only sound strategy would have been to have all four alibi witnesses testify.  But it is well-established that a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess.  McCullough v. State, 973 N.E.2d 62, 83 (Ind. Ct. App. 2012), trans. denied (quoting Curtis v. State, 905 N.E.2d 410, 415 (Ind. Ct. App. 2009); see also Wrinkles v. State, 749 N.E.2d 1179, 1200 (Ind. 2001) ("Which witnesses to call is the epitome of a strategic decision.").

Here, Scruggs's trial counsel testified at the post-conviction hearing that he was "certain" that he used the investigators with the Public Defender's Agency to locate any witnesses that Scruggs told him of.  Post-Conviction Tr. p. 17.  He also stated that, if he thought Hudgins and Golder were credible witnesses, he "would have made every possible effort to get them here."  Post-Conviction Tr. pp. 19-20.  To the extent that these statements were contradicted by the affidavits of Hudgins and Golder that Scruggs submitted in support of his post-conviction petition, the post-conviction court specifically found these affidavits to be unworthy of credit.  Assuming *arguendo* that Scruggs's trial counsel's performance was deficient for failing to find and call these witnesses, at most

11

these witnesses would have corroborated the testimony of two alibi witnesses already presented. Given the cumulative nature of these alleged alibi witnesses, and the fact that the State presented the evidence of four eyewitnesses, one of whom was Scruggs's girlfriend, implicating Scruggs as the shooter, we cannot say that Scruggs has shown that the result of his trial would have been different even if Hudgins and Golder had testified.

C. *Failure to Move for Mistrial*

Scruggs also claims that his trial counsel's performance denied him a defense because of his counsel's actions regarding the trial court's ruling excluding the testimony of one of the State's witnesses, Rob Washington ("Washington"). The State presented evidence that Washington had been at the scene of the crime and had been in possession of a handgun. The State's probable cause affidavit listed Washington as an eyewitness to the shootings. However, the State had been unable to locate Washington and did not call him to testify at trial. Then, on the last day of the trial, after Scruggs had rested his defense, the State found Washington and wished to call him as a rebuttal witness. Scruggs's trial counsel objected to this late testimony, and the trial court sustained the objection, refusing to allow Washington to testify. The trial court also ruled, however, that Scruggs would not be permitted to comment on Washington's whereabouts during closing argument. Scruggs's counsel objected to this portion of the ruling, but did not move for a mistrial, which Scruggs now claims constituted ineffective assistance.

On appeal, Scruggs wholly fails to explain why his trial counsel should have moved for a mistrial or how he was prejudiced by this failure. Presumably, Washington's testimony would have been favorable to the State. Otherwise, it would not have

12

requested to present his testimony in rebuttal. Nor has Scruggs pointed to any evidence suggesting that Washington was the shooter. It bears repeating that four eyewitnesses, one of whom was Scruggs's girlfriend at the time, identified him as the shooter. In short, Scruggs has not persuaded us that his trial counsel was ineffective regarding the exclusion of Washington's testimony.

D. *Failure to Tender Jury Instructions on Lesser-Included Offenses*

Scruggs also claims that this trial counsel was ineffective for failing to tender jury instructions on voluntary manslaughter, aggravated battery, reckless homicide, criminal recklessness, or other lesser-included offenses of murder. We note that Scruggs asked no questions of his trial counsel at the post-conviction hearing regarding his decision not to tender lesser-included offense instructions. Accordingly, Scruggs cannot show that this was not a strategic decision. See Culvahouse v. State, 819 N.E.2d 857, 863 (Ind. Ct. App. 2004) (appellate court may infer that trial counsel would not corroborate petitioner's claims of counsel's own ineffectiveness).

Moreover, as the post-conviction court noted, Scruggs's theory of the case was an alibi defense, i.e. that he was not at the scene of the crime and was not the shooter. Tendering lesser-included offense instructions could have undermined this theory of the defense. Our supreme court has long held that "a tactical decision not to tender a lesser included offense does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense." Autrey v. State, 700 N.E.2d 1140, 1141 (Ind. 1998). Simply put, Scruggs's trial counsel chose to pursue an "all or nothing" strategy, and we will not second-guess this strategic decision with the

13

benefit of hindsight. See Lane v. State, 953 N.E.2d 625, 630 (Ind. Ct. App. 2011) (holding that trial counsel's decision to pursue an "all-or-nothing" defense was not unreasonable).

In conclusion, the post-conviction court did not clearly err in concluding that Scruggs failed to prove that he was denied the effective assistance of trial counsel.

## II. Ineffective Assistance Of Appellate Counsel

Scruggs also claims that his appellate counsel was constitutionally ineffective. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel: the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different. Harris v. State, 861 N.E.2d 1182, 1186 (Ind. 2007).

To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. Id. If the analysis under this test demonstrates deficient performance, then we examine whether "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." Id. Ineffective

assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. Id.

In the present case, Scruggs simply recasts two of his claims of ineffective assistance of trial counsel, the allegations of prosecutorial misconduct and the trial court's ruling regarding Washington's testimony, as claims of ineffective assistance of appellate counsel, arguing that his appellate counsel should have presented these issues on direct appeal. As set forth above, we have rejected these claims on their merits. Accordingly, Scruggs cannot establish that these issues were "clearly stronger" than those his appellate counsel did present on direct appeal, whether the evidence was sufficient to support his convictions and whether his sentence was manifestly unreasonable. Thus, the post-conviction court did not err in rejecting Scruggs's claim of ineffective assistance of appellate counsel.

## Conclusion

The post-conviction court properly concluded that Scruggs's free-standing claims of fundamental error are not cognizable in a petition for post-conviction relief. Nor did the post-conviction court clearly err in concluding that Scruggs was not denied the effective assistance of trial or appellate counsel.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.