

FILED

Oct 11 2023, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dylan T. Myers,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 11, 2023<br><br>Court of Appeals Case No.<br>22A-CR-3022<br><br>Appeal from the Montgomery<br>Circuit Court<br><br>The Honorable Harry A. Siamas,<br>Judge<br><br>Trial Court Cause No.<br>54C01-2102-F1-365 |

**Opinion by Chief Judge Altice**
Judges Riley and Pyle concur.

**Altice, Chief Judge.**

## Case Summary

Dylan T. Myers appeals his conviction for neglect of a dependent resulting in catastrophic injury, a Level 1 felony, pursuant to Ind. Code § 35-46-1-4 (a)(1) and -4(b)(3), (the Neglect Statute). Myers claims that his conviction must be reversed because the jury reached inconsistent verdicts as to the charges that were brought against him. In the alternative, Myers contends that the evidence was insufficient because the State failed to show that he knowingly placed the victim in a situation that endangered her health and resulted in a catastrophic injury. Finally, Myers argues that his sentence violates the Proportionality Clause[1] of the Indiana Constitution.

We affirm.

## Facts and Procedural History

In August 2019, Myers and Megan Marshall were living together in a Crawfordsville apartment along with C.M.—Marshall's three-month-old daughter—and her other minor children. On August 22, Myers left for work at 9:15 a.m., and Marshall left for her work at 2:00 p.m. Myers's sister, Destiny, babysat C.M. and the other children while Myers and Marshall were at work. When Marshall left for work, C.M. seemed "perfectly normal" and was behaving "fine, like a normal baby." *Transcript Vol. II* at 32. At approximately

---

[1] Ind. Const. art. 1, § 16.

6:10 p.m., Destiny took a video of C.M. playing on the floor and sent it to Marshall.

[4] Shortly after 7:00 p.m., Myers returned home from work. C.M. began to "fuss" and Myers carried her into a bedroom. *Id.* at 37. A few minutes later, Myers returned to the living room and told Destiny that he had changed C.M.'s diaper and put her to bed. C.M. started to cry again and Myers went back into the bedroom. A few moments later, Destiny heard C.M. make a loud whimpering noise "like when you step on a dog." *Id.* at 39-40. Myers then walked out of the bedroom and handed C.M. to Destiny. C.M.'s breathing was labored, and her leg was trembling. Myers exclaimed that "something wasn't right with [C.M.]" *Id.* at 88-89.

[5] When Marshall returned from work a few minutes later, she noticed that C.M. was limp, unresponsive, and suffering from seizures. Marshall immediately called 911, and when the paramedics arrived just after 7:30 p.m., C.M. was suffering from respiratory distress and seizures. The paramedics also observed that there was some bruising on C.M.'s chest.

[6] C.M. was transported to a local hospital where a CT scan showed fresh bleeding on C.M.'s brain. At that point, C.M. was intubated and placed on a ventilator to help her breathe. There was also evidence that C.M. had sustained prior bruising to her ribs, neck, chest, and inner thighs. One of the attending physicians was informed that C.M. had fallen from Marshall's couch two days earlier.

[7] C.M. was then transferred to Riley Hospital in Indianapolis, where she was examined by a neurologist. It was determined that C.M. suffered hematomas, contusions, retinal hemorrhaging in all three layers of her retina, bruising on various parts of her body, and five fractured ribs.

[8] On February 19, 2021, the State charged Myers with: Count I, neglect of a dependent resulting in a catastrophic injury, a Level 1 felony; Count II, aggravated battery, a Level 3 felony; and Count III, battery resulting serious bodily injury to a person less than fourteen years old, a Level 3 felony. The charging information with respect to Count I provided as follows:

> On or about August 22, 2019, at Shady Knoll, Apt. D, Crawfordsville, Montgomery County, State of Indiana, one Dylan T. Myers, a person having the care of a dependent, to-wit: C.M., age three (3) months whether assumed voluntarily or because of a legal obligation knowingly or intentionally placed said dependent in a situation that endangers the dependent's life or health, to-wit: shook, squeezed, and/or threw said infant, said Dylan Myers being at least eighteen (18) years of age and said acts resulting in the catastrophic injury of the dependent C.M., who is a child less than fourteen (14) years of age. All of which is contrary to I.C. 35-46-1-4(a)(1) and I.C. 35-46-1-4(b)(3), and against the peace and dignity of the State of Indiana.

*Appellant's Appendix Vol. II* at 16.

[9] During Myers's jury trial on October 17, 2022, Destiny testified that she did not harm C.M. in any way. Marshall also denied hurting C.M. and testified that Myers was occasionally "rough" with C.M., in that he "squeezed [C.M.] a lot" and dropped her onto the bed and couch, causing C.M. to cry. *Transcript Vol. II*

at 140-41. Two physicians testified that C.M.'s alleged fall from the couch would not explain the extent of the August 22 injuries. Dr. Roberta Hibbard testified that C.M.'s injuries were representative of several different types of physical trauma. She explained that a "high energy acceleration/deceleration injury," such as a slam, throw or drop, would have caused C.M.'s head and eye injuries and the bleeding to her brain. *Transcript Vol. III* at 11-12. The evidence further established that C.M. presently suffers from epilepsy and developmental delays. Additionally, C.M. cannot speak or walk independently because of her head injuries.

[10] Following the presentation of evidence, the jury found Myers guilty of Count I, neglect of a dependent resulting catastrophic injury, but not guilty on the remaining counts. The trial court subsequently sentenced Myers to thirty years of incarceration. He now appeals.

## Discussion and Decision

### I. Sufficiency of the Evidence

[11] Myers challenges the sufficiency of the evidence, first claiming that the conviction must be set aside because the jury's acquittal on the battery charges and its finding of guilt under the Neglect Statute amount to inconsistent verdicts. Notwithstanding Myers's contention, we note that jury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable. *Beattie v. State,* 924 N.E.2d 643, 649 (Ind. 2010). The evaluation of whether a conviction is supported by the

evidence is independent from—and irrelevant to—the assessment of whether verdicts are contradictory and irreconcilable. *Id.* at 648. In short, the right of a criminal jury to exercise lenity and decline to convict is "well recognized" and an "important component of our criminal justice system." *Id.* at 648-49.

[12] In this case, it is not known why the jury acquitted Myers of the two battery charges. In reviewing whether the evidence was sufficient to support Myers's neglect conviction, it is immaterial that the jury found him not guilty on the battery counts. *See id.* Thus, we reject Myers's claim that his conviction under the Neglect Statute must be set aside on the grounds that the verdicts were inconsistent.

[13] Myers further claims that the evidence was insufficient because the State failed to prove he knowingly placed C.M. in a situation "that endangered her life or health and resulted in catastrophic injury." *Appellant's Brief* at 14. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Hall v. State,* 177 N.E.3d 1183, 1191 (Ind. 2021). Rather, we consider the evidence most favorable to the verdict and any reasonable inferences that can be drawn therefrom. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *New v. State,* 135 N.E.3d 619, 624 (Ind. Ct. App. 2019). We further note that the evidence need not exclude every reasonable hypothesis of innocence, but instead, "the evidence is sufficient if an inference may

reasonably be drawn from it to support the verdict." *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007).

[14] To support Myers's conviction under the Neglect Statute, the State was required to prove beyond a reasonable doubt that Myers, an adult, had the care of C.M., a child under the age of fourteen, and knowingly placed C.M. in a situation that endangered her life or health and that resulted in her catastrophic injury. *See* I.C. § 35-46-1-4(a)(1), (b)(3). "Catastrophic injury" is defined as a bodily injury "so severe that a person's ability to live independently is significantly impaired for a period of at least one (1) year." Ind. Code § 35-31.5-2-34.5. Catastrophic injury includes an "intellectual disability." *Id.*

[15] In this case, the evidence showed that C.M. was behaving "perfectly fine" while Destiny was babysitting the children. *Transcript Vol. II* at 36, 77. When Myers returned home from work shortly after 7:00 p.m. and was alone with C.M. in the bedroom, Destiny heard C.M. make a loud whimpering sound. Approximately one minute later, Myers brought C.M. into the living room and handed her to Destiny. Destiny observed that C.M.'s eyes were only half open, her breathing was shallow, and her leg was trembling.

[16] The testimony of hospital physicians opined that C.M.'s immediate injuries— subdural hematomas, contusions to both sides of the cerebellum, and significant retinal hemorrhaging—would have occurred between 7:15 p.m. and 7:30 p.m. on August 22, 2019. From this evidence, the jury could reasonably infer that C.M.'s injuries were sustained when Myers was alone in the bedroom with her.

Also, contrary to Myers's contention, the evidence presented at trial supports the reasonable inference that it was Myers who injured C.M. The emergency room physician who initially treated C.M. testified that C.M. suffered from fresh bleeding in the brain and hemorrhaging in her eyes, both indicative of trauma or injury caused by force. Any prior alleged fall from the couch—or other accident—failed to explain those injuries. Dr. Hibbard described the force necessary to cause C.M.'s injuries as "a high energy acceleration, deceleration type of injury." *Transcript Vol. III* at 11-12. Considering this evidence, the jury could reasonably infer that Myers inflicted C.M.'s injuries because he was alone with C.M. immediately before she showed any symptoms of her injuries. *See, e.g., Lush v. State*, 783 N.E.2d 1191, 1196-97 (Ind. Ct. App. 2003) (holding that the jury could reasonably conclude that the defendant inflicted the injuries on the victim when the evidence established that the victim was in the defendant's exclusive care, and the injuries were recent upon arrival at the hospital).

[17] Finally, we reject Myers's claim that the State failed to show that his conduct was "knowing." *Appellant's Brief* at 14. In accordance with Ind. Code § 35-41-2-2(b), a person engages in conduct "knowingly if, when he engages in the conduct, he is aware of the high probability that he is doing so." A defendant's intent can be proved by circumstantial evidence, and the factfinder can infer intent "from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Phipps v. State,* 90 N.E.3d 1190, 1195 (Ind. 2018).

Here, the evidence established that Myers was alone with three-month-old C.M. immediately before C.M. sustained numerous traumatic injuries. Dr. Hibbard opined that C.M.'s severe injuries were the result of a slam, throw, drop, or high-speed motor vehicle accident. Given the brutality of the attack, the jury could reasonably infer that Myers acted knowingly. *See, e.g., Vanryn v. State*, 155 N.E.3d 1254, 1267 (Ind. Ct. App. 2020) (holding that the duration, brutality, and relative strengths of the defendant and victim are factors that can be considered by the jury as indications of the defendant's intent).

For all these reasons, we conclude that the State presented sufficient evidence to support Myers's conviction.

## II. Proportionality Claim

Myers argues that his conviction must be set aside because the penalty for violating the Neglect Statute violates the Proportionality Clause of the Indiana Constitution. Myers asserts that he is entitled to reversal because the Neglect Statute "has identical elements but different punishments." *Appellant's Brief* at 17.

We initially observe that when the constitutionality of a statute is challenged, we presume that the statute is valid, and a "heavy burden" is placed on the party challenging the statute to clearly overcome that presumption. *State v. Moss-Dwyer*, 686 N.E.2d 109, 112 (Ind. 1997). The presumption of constitutionality will not be overcome absent a clear showing to the contrary. *Mann v. State*, 895 N.E.2d 119, 122 (Ind. Ct. App. 2008). Because criminal

sanctions are a legislative prerogative, "separation-of-powers principles require a reviewing court to afford substantial deference to the sanction the legislature has chosen." *Id.* We will not disturb the legislature's determination "except upon a showing of clear constitutional infirmity." *Moss-Dwyer*, 686 N.E.2d at 111-12.

[22] The Proportionality Clause of the Indiana Constitution provides that "all penalties shall be proportioned to the nature of the offense." Ind. Const. art. 1, § 16. A sentence violates the Proportionality Clause when offenses with identical elements are given different sentences. *Johnson v. State*, 103 N.E.3d 704, 707 (Ind. Ct. App. 2018), *trans. denied.* A sentence will only be found disproportionate if it is so severe and entirely out of proportion to the gravity of the offense committed that it "shock[s] public sentiment and violate[s] the judgment of . . . reasonable people." *Lane v. State,* 953 N.E.2d 625, 631 (Ind. Ct. App. 2011). In other words, the Proportionality Clause is violated only when the criminal penalty is not graduated and proportioned to the nature of the offense. *Knapp v. State*, 9 N.E.3d 1274, 1289 (Ind. 2014).

[23] The Neglect Statute provides that

> (a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:
>
>> (1) places the dependent in a situation that endangers the dependent's life or health;

(2) abandons or cruelly confines the dependent;

(3) deprives the dependent of necessary support; or

(4) deprives the dependent of education as required by law;

commits neglect of a dependent, a Level 6 felony.

[24] The Neglect Statue further provides for an enhancement of the offense if certain circumstances exist. That is, if the offense results in "serious bodily injury" to the dependent, the offense is a Level 3 felony. I.C. § 35-46-1-4(b)(2). Serious bodily injury includes an injury "that causes . . . permanent or protracted loss or impairment of the function of a bodily member or organ. . . ." Ind. Code § 35-31.5-2-292. And if the offense is committed by a person at least eighteen years of age and results in "death or catastrophic injury" to a "dependent under fourteen years old," the crime is a Level 1 felony. I.C. § 35-46-1-4(b)(3). Catastrophic injury means bodily injury so severe that a person's ability to live independently is significantly impaired for a period of at least one year, and "includes an injury causing paralysis. . . or an intellectual disability." I.C. § 35-31.5-2-34.5.

[25] Contrary to Myers's claim, the Level 1 and Level 3 felonies under the Neglect Statute do not have different penalties for identical elements. That is, the offense may be enhanced to a Level 3 felony if it results in an injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, permanent or protracted loss or impairment of

the function of a bodily member or organ. I.C. §§ 35-46-1-4(b)(2); I.C. § 35-31.5-2-292. The offense may then be elevated to a Level 1 felony only if the defendant was at least eighteen years of age, the victim was less than fourteen years of age, and the injury—which includes paralysis or an intellectual disability—was so severe that the victim's ability to live independently was significantly impaired for a period of at least one year. I.C. §§ 35-46-1-4(b)(3); I.C. § 35-31.5-2-34.5. In short, the State must prove additional elements and a more severe injury before a defendant can be convicted of a Level 1 felony under the Neglect Statute.

[26] To be sure, a goal of our legislature is to punish more severely those who inflict more severe harm. *See Mann*, 895 N.E.2d at 124. Because each elevation of the offense under the Neglect Statute requires an infliction of greater harm, the offenses do not have identical elements. Thus, the assignment of different sentences to those different offenses does not offend the Proportionality Clause of the Indiana Constitution. *See id.* (rejecting an argument that Class B felony aggravated battery and Class C felony battery resulting in serious bodily injury violate the Proportionality Clause because, despite the overlap in the types of injuries encompassed within both offenses, the elements for the offenses were not identical).

[27] For all these reasons, we conclude that the sentence imposed on Myers's conviction under the Neglect Statute as a Level 1 felony does not offend the Proportionality Clause of the Indiana Constitution.

[28]    Judgment affirmed.


Riley, J. and Pyle, J., concur.